GEORGE ARMSTRONG *v.* PHEBE A. ARMSTRONG.

1. HUSBAND AND WIFE: DIVORCE: ADMISSIONS OF HUSBAND WHEN EVIDENCE.—The admissions of the husband alone are not sufficient to establish the charge of adultery; but if supported by other proof, or corroborated by circumstances clearly proven, they are competent, and sufficient to justify a decree for a divorce *a vinculo*. 1 Johns. Ch. R. 198.

2. SAME: CONDONATION.—Condonation is but a forgivness on condition of future

fidelity, which if not kept, the rights of the injured party are restored as if there had been no condonation. Bishop, Mar. & Div. § 372.

3. SAME.—The doctrine of condonation is not applied with the same strictness against the wife, as against the husband; her want of control over him; the difficulty she may find in quitting his house, or withdrawing from his bed, and the fact that his guilt is not of the same consequence as hers, renders it not improper that she should, for a time, show a patient forbearance; and therefore condonation will not be implied against the wife, from the mere fact of cohabitation after knowledge of the husband's guilt.

4. SAME: ALIMONY.—Where a divorce *a vinculo*, is granted on account of the adultery of the husband, the court should make her such allowance for alimony, as from all the circumstances of the case appear " fit, reasonable and just;" and in a case where the conduct and demeanor of the wife during marriage was unexceptionable, and the husband was shown to be a man of active business habits, with no legitimate children to support: an allowance of one-third of his estate was not deemed too high.

5. CHANCERY: PLEADING : MULTIFARIOUSNESS.—The wife may embrace in her bill against the husband for a divorce, her claim against him on account of his appropriation of her separate estate to his own use.

6. HUSBAND AND WIFE : EARNINGS OF WIFE BELONG TO HUSBAND.—The earnings of the wife during coverture, belong to her husband absolutely, and will not be decreed to her upon a divorce granted on account of his adultery.

APPEAL from the District Chancery Court at Paulding. Hon. B. C. Buckley, vice-chancellor.

On the 29th day of December, 1851, the appellee filed her bill in the District Chancery Court, against the appellant, for a divorce and alimony, and for the recovery of the sum of $25 which she alleged that she had loaned him, and the sum of $115, which he had taken of her separate property.

The substance of the bill so far as it related to the divorce, was that in 18— the complainant and defendant had intermarried, and had lived together pleasantly, until some eight or ten years previous to the filing of the bill the defendant's affections had been estranged from complainant, by an adulterous intercourse with a certain Mrs. Tubbs ; that for a long time she had endeavoured to win him back to his duty and fidelity as a husband, by offices of affection and kindness, but that her efforts had failed, and the criminal intercourse still continued ; and that for several years previous to this separation his treatment of her had been cruel and abusive ; and that finally on the 11th day of December,

A. D. 1851, he had driven her from his house, and that they had lived separately since.

The defendant denied these allegations of the bill, and averred a previous offer to receive the complainant back, which offer was also renewed in the answer.

The substance of the proof upon the charge of adultery was, that in 1844, a certain Mrs. Tubbs, who had been living in the neighborhood, removed to Warsaw, Alabama, where she remained about two or three years, and then removed back to this State. That after her removal back to this State, defendant had at his own expense removed her from the place at which she first located, to a house and tract of land which he owned, where she continued to reside at the time of the filing of the bill, and which was four or five miles distant from his residence. Whilst she lived in Alabama, one of the witnesses, who was in company with defendant in the city of Mobile, noticed his absence from that place for several days, and when he returned the witness charged him with having been to Warsaw, to see Mrs. Tubbs, and the defendant neither admitted nor denied the fact, but stated that some person ought to take care of her. After her removal to the place provided for her by the defendant, he sent his slave to cultivate her crop, and hired other persons also to assist her on the place. He frequently furnished her from his store with provisions and family supplies, and he was also known to visit her frequently. Upon one occasion a witness observed him in her private room, when familiarities between them of a suspicious character took place. Upon another occasion, when he and two of the witnesses were at her house, and at the breakfast table, Mrs. Tubbs's oldest daughter asked her for something to eat, and she told the child to "ask her pa," referring to defendant, who thereupon helped the child to provisions on the table. Defendant frequently, and to various persons acknowledged this child, which was born during his suspected intimacy with Mrs. Tubbs, to be his own; he took her to his house, and kept her there for some time, recognizing and treating her as his own. He sent her to school and otherwise manifested a deep interest in her. His adulterous connexion with the woman, was a subject of notoriety in the neighborhood for several years,

and during all which time he continued his visits and protection to her. It was also the subject of frequent violent altercations between the complainant and defendant. Mrs. Tubbs's reputation for chastity was notoriously bad.

On the day after the bill was filed, the complainant proposed to return and live with the defendant, and permit the child before referred to, as his, to remain with them, if he would cease his connexion with Mrs. Tubbs, but the offer was declined.

The proof on the subject of his abusive treatment to the complainant was conflicting, but the preponderance of the evidence went to show that it was unkind. One witness proved, that he struck the complainant on one occasion with his hand. All the witnesses agreed that the complainant was of good character, and highly esteemed by the neighbors, and that she was remarkably industrious and attentive to her household duties. A violent altercation occurred between the parties on the 11th day of December, 1851, which resulted in defendant's ordering the complainant to leave his home, and his declaration of an intention not to live with her again.

The vice-chancellor decreed a divorce *a vinculo*, and that defendant should pay to the complainant the two sums of money sued for, and allowed her alimony to the amount of one-third of his estate. From this decree the defendant appealed.

*D. Mayes*, for appellant.

1. Is the adultery sufficiently established? In the case of *Betts* v. *Betts*, 1 Johns. Ch. R. 197, it was proved that defendant had been seen once or twice at a house of ill-fame in New York, but did not stay long. He was not seen alone with any woman. Defendant had once told the witness he had the bad disorder, by which he was understood to mean the venereal disease. A second witness proved that the defendant confessed he had the venereal, and took it from a girl in New York, and that he had had a child by a certain other girl. This witness proved acts of cruelty; another witness also proved acts of cruelty. Besides, the bill was taken *pro confesso*. Chancellor Kent decided, that, although admissions of adultery were admissible evidence, they were not sufficient to

Armstrong v. Armstrong.

warrant a decree for divorce on the ground of adultery, unless they be supported by strong presumptions, and by some determinate facts, and refused the divorce. He refers to Burn's Eccl. Law, title Marriage. *Baxter* v. *Baxter*, 1 Mass. R. 346; *Holland* v. *Holland*, 2 Ib. 154. *Traite de l'Adultere, par M. Fournel*, 160. Separated from the confessions of Armstrong, there is neither ground of strong presumption nor determinate fact.

2. The evidence, if sufficient to establish the fact of adultery, does not establish any criminal intercourse after the birth of the girl, said by defendant to be his child. The offence, therefore, was condoned, and the right to sue for a divorce lost, by lapse of time, and also by condonation. The girl was seven or eight years old; the complainant all the time, according to her own showing, knew the fact; no impediment prevented a suit for divorce, yet she lived and cohabited with complainant. That time bars her, see *Williamson* v. *Williamson*, 1 Johns. Ch. R. 488.

*Johnson* v. *Johnson*, 4 Paige, 460; *Phillips* v. *Phillips*, 4 Blackf. 131; *Pugsley* v. *Pugsley*, 9 Paige, 589, prove the condonation. To revive the cause of suit, when the adultery has been forgiven, the offence must be of the like kind. 4 Paige, 460. It was the quarrel of the 11th December, 1851, and not the adultery, which produced the separation; and the offer of defendant to receive his wife is a sufficient answer to that; it was no cause of divorce.

3. The decree is erroneous in two respects. First. In decreeing the complainant the sum claimed by her as a debt. The $25 at any rate, was the husband's money. But the evidence is insufficient to establish the fact of indebtedness, and the recovery of a debt is not incidental to, or proper to be united with a decree of divorce. Second. The decree, that the husband pay in cash one-third of the estimated value of his whole estate, is unwarranted. It is unreasonable and excessive in amount. Had he died, she could have had but a dower in the real estate; and that he should pay a gross sum, to be held by her in absolute property, is unauthorized by law. The statute, (Hutch. Code, 496,) "concerning divorce and alimony," both from the title and words of enactment, condemn this decree. Its language is, "When a divorce shall be

decreed on account of the parties being within the prohibited de-grees, or for the cause of adultery," &c., " the court shall and may take such order, touching the maintenance and alimony of the wife, or any allowance to be made to her, and if any, the security to be given for the same, as from the circumstances of the parties, and nature of the case, may be fit, equitable, and just." The words, "alimony," "allowance," and "the security to be given for the same," all indicate payments from time to time. The sum is nei-ther reasonable nor just. The husband is to raise and pay to his wife in cash, or have his property sold to raise it, one-third of the estimated value of his unproductive real estate, in which she would have had no interest, but on his death, she surviving him, and in that event but a life estate in a third, and one-third of the value of all his personalty she has in absolute property to pass to her next of kin, or be disposed of by will, at her death, him surviving her.

*Freeman* and *Dixon*, for appellee.

The adultery is established fully and completely, by the frequent admissions of plaintiff in error, and by other direct testimony, as follows:—Henry Kum,—" Armstrong admits Mrs. Tubb's oldest child as his;" Elizabeth Davis proves same admission; George Boyd proves his knowledge of the criminal intercourse between plaintiff and Mrs. Tubbs ; many other witnesses also prove the admission of Armstrong, that he was the father of Mrs. Tubbs' oldest child, and they all, or nearly all fix the time of this admis-sion at or about the time of the outbreak and final separation of the parties. No reasonable doubt, we think, can remain upon the mind of the court, as to the *adultery* of the plaintiff; this, by statute, would be sufficient to justify the decree; but it is contended, that there was a condonation of this offence—is this true ? In the first place, all the testimony goes to show that the wife only came to the knowledge of the adulterous conduct of the husband at or about the time of the separation, and not before, and there is not the slightest proof that the wife ever cohabited with Armstrong, the plaintiff, after she knew of his criminal conduct ; but if it were otherwise, could the plaintiff in error avail himself of this condo-

Armstrong *v.* Armstrong.

nation, unless he had specifically alleged it by way of plea or an-
swer? we think not. No such plea or answer is made, but a total
denial of the adultery is interposed, and proof demanded, and that
proof is furnished amply. The fact, if it were established, of
condonation by the wife, will not be very strictly applied to the wife.
See *Johnson* v. *Johnson*, 1 Edw. Ch. 439; *Wood* v. *Wood*, 2
Paige, C. R. 108.

The reason of this laxity of the rule in regard to the wife, is
obvious—the wife being so entirely dependent upon, and so subject
to the authority of the husband, the courts, with justness, refuse to
hold her to the strictness of the rule applied to the husband;
besides, condonation is not an absolute bar but merely conditional,
and the right to relief is revived by a repetition of the offence.
*Smith* v. *Smith*, 4 Paige, C. R. 432; *Johnson* v. *Johnson*, Ib. 460;
*Collier* v. *Collier*, 1 Dev. Ch. 352. Indeed, much slighter cause
than the original offence will revive the right of divorce after a
condonation. *Burr* v. *Burr*, 10 Paige, C. R. 20.

In the present case, it may be contended that the offence was
continuous, the witnesses all speak of the conduct of Armstrong,
in reference to Mrs. Tubbs and her child, as continuing up to and
even after the separation. There certainly was no condonation
*after* that separation; and at that separation, even if condonation
had occurred for previous fault, the original cause was revived by
the husband's cruelty and abandonment. *Johnson* v. *Johnson*, 14
Wend. 637; 1 Edw. Ch. R. 439.

The testimony of the witnesses all concur in showing extreme
ill treatment by the husband; and that upon the occasion of the
separation, he absolutely drove her from his house, telling her she
was no longer his wife, and that if she ever returned he would
abuse her. We ask the court to refer to this testimony, to show a
justification of the decree.

One of the witnesses saw plaintiff strike his wife, and saw the
bruises afterwards upon her person. Another witness says, that
after all his ill treatment and orders to leave his home, she begged
to be permitted to remain, but was refused and ordered off, &c.

Plaintiff alleges that he wrote a letter to his wife requesting her
return home; but the letter is not on file, and there is no proof that,

if any such letter *was* written, that it was done before the commencement of this action.

Having now disposed of the most material points of objection to the decree, we will recur to that portion relative to the money loaned and taken by plaintiff from defendant in error.

The bill of complaint having alleged that the $25 was a part of the earnings and frugality of the wife, it of course was really the property of the husband, and although we have proved the loan, yet we must per force confess the decree, in respect to this sum, erroneous; but we ask the court, in this behalf, to order a decree as the court below should have done, under the statute to that end; we request this, because, if the case should simply be reversed, it will be returned and thence distributed under the new chancery law to the Circuit Courts, which will produce great delay, and because the *whole* case being now before this court, all further litigation will cease with the decree of this court.

However, as to the $116 alleged to have been taken from the trunk, which was the separate property of the wife, by gift from her mother, we think the decree correct. Plaintiff is proved to have acknowledged the taking of this sum of money from his wife's trunks—which several witnesses proved he broke open. This admission renders the decree correct in that respect.

The only remaining point of objection is, as to the alimony allowed, which is charged to be excessive. Testimony was taken, and is on file, as to the value of the husband's estate, which, like all testimony upon similar subjects, varies in amount; but the aggregate of the sums would clearly show his estate worth $5000, or upwards. A commissioner was appointed who reported that sum, and the decree is made for one-third that amount as alimony. Is this erroneous?

Having established the right to a decree for divorce, the granting of alimony is purely a matter of course. *Wright* v. *Wright,* 1 Edw. Ch. R. 62; *Hammond* v. *Hammond,* 1 Clarke, 151.

The amount of alimony is a matter within the discretion of the court, as well as the mode of payment, &c., and is to be graduated by the circumstances of each case. *Richmond* v. *Richmond,* 1 Green, Ch. 90.

By the statute (Hutch. Code, 496,) the whole matter of alimony is left in the discretion of the court, who "shall and may" take such order, "touching the maintenance and alimony of the wife, *or any allowance to be made to her*, as from the circumstances of the parties, and nature of the case, *may be fit, equitable, and just.*" It is clearly within the discretion of the court, either to make a periodical allowance, or to order an allowance absolute and final. In this case, there were no children of the marriage, and no incumbrance of the estate, and it was right and proper to make such allowance as would leave complainant free from all further dependence upon one who had so abused the confidence and blasted the hopes of her who had confided her destiny into his keeping, as his wife.

HANDY, J., delivered the opinion of the court.

This was a bill in equity, filed by the defendant in error against her husband for a divorce and for alimony, and also for the recovery of certain sums of money, the separate property of the wife, which it is alleged the husband appropriated to his own use. The ground of the 'relief sought is, adulterous intercourse by the husband with another woman, which had been, for several years, and was, when the bill was filed, carried on, and cruel treatment and abuse; which continued until December, 1851, when she was driven by her husband from his house and home, in consequence of disagreements between them, produced by the adulterous connexion. The answers deny the allegations of the bill, except the separation and the use of one of the sums of money, $25, which is alleged to be his property in law, and offers to receive her, if she will return; and alleges a previous proposition that she should return, and an offer to pay her board to that time.

A great number of depositions were taken, and on the hearing the vice-chancellor decreed a divorce *a vinculo*, alimony to the amount of one-third of the husband's estate, and the payment of the sums of money alleged to have been used by the husband, as the wife's separate property. The husband thereupon brings the case here.

The first objection taken to the decree is, that there is no proof of adultery except the admissions of the husband, and that his

admissions alone are not sufficient to warrant the decree dissolving the marriage. But if supported by other proof, or corroborated by circumstances clearly proved, his admissions are competent, and are sufficient to justify the decree. *Betts* v. *Betts*, 1 Johns. Ch. Rep. 198. In this case the admissions are amply corroborated by circumstances proved by the witnesses. It is shown that the woman with whom he had the adulterous connexion lived upon premises owned by him, and was mainly supported by him; that he frequently visited her, and was alone with her in private in her room, at the place where she resided, at some distance in the country from his residence; that he had her removed to the place where she resided, and that his slave worked for her; that he sent to school, at his expense, her eldest child, a girl of some eight years of age, to whom he frequently showed great attachment, and acknowledged her to be his child; and these acts took place after disagreements had occurred between him and his wife, in consequence of his conduct towards the other woman, and when his criminal intercourse with her was a matter of common rumor and even notoriety. These facts are certainly sufficient to show that his admissions were true, and not made for a collusive purpose; and it is for the purpose of preventing collusion and obtaining improper divorces thereby, that the admissions of the criminated party are held to be insufficient, of themselves, to warrant a divorce *a vinculo*. *Holland* v. *Holland*, 2 Mass. 154.

Again, it is insisted that the decree is erroneous, because it must be taken from the allegations of the bill and the proofs, that there was a condonation of the offence.

It is true, the bill states that the wife discovered the adulterous conduct of her husband some years before the filing of the bill; but the further allegation is, that he was, at the time of filing the bill, and had been for several years, carrying on the improper intercourse, and that she had used all the means which affection could suggest to cause him to abandon it, but without success. So far then as the bill shows, although there might have been a condonation of the original violation of duty, yet there was a repetition and continuation of the offence, which was a fresh grievance, entitling her to redress, and revives the former condoned offence.

The rule is, that condonation is but a forgiveness on condition of subsequent fidelity, which, if not kept, the rights of the injured party are restored, as if there had been no condonation. Bishop on Marr. and Div. § 372.

But the evidence sufficiently shows a continuation of the improper conduct.

The final separation took place in December, 1851, and it is proved that in January, 1851, his wife said to him that, if he would dissolve his connexion with the woman named and stay at home, she would take the little girl home (meaning the child he had by that woman,) and do for it as if it were her own. Within a year or two, and even less time, before the separation, he continued to send her provisions, furnished her with a place of residence, had work done for her, and had her removed to her place of residence; that he admitted that he was the father of her eldest child, then about eight years old, and was generally reputed to be the father of her two younger children; that she was a woman whose character for chastity was notoriously bad, and that he was in the habit of visiting her frequently in the country, and having intercourse with her of a very suspicious character. All these circumstances go strongly to show that if he ever had criminal intercourse with this woman, at any former period of time—as he admitted that he had—it must have been continued until within a short period before the separation from his wife. If not sufficient of themselves to show positively fresh acts of adultery, they are sufficient, coupled with the previous act of adultery,—which is admitted—to justify the conclusion that his criminal intercourse was continued.

But the doctrine of condonation is not applied with strictness to the rights of the wife as it is to the husband; and is held rarely to bar her redress. Bishop on Marr. and Div. §§ 368, 410. "A woman," says Lord Stowell, "has not the same control over her husband, has not the same guard over his honor, has not the same means to enforce the matrimonial vow—his guilt is not of the same consequence to her; therefore the rule of condonation is held more laxly against the wife." D'Aguilar v. D'Aguilar, 3 Eng. Eccl. Rep. 337. In another case he says: "It is not improper she

VOL. III.—19

should, for a time, show a patient forbearance; she may find a difficulty either in quitting his house or withdrawing from his bed. The husband, on the other hand, cannot be compelled to the bed of his wife; a woman may submit to necessity. It is too hard to term submission mere hypocrisy. It may be a weakness pardonable in many circumstances." *Beeby* v. *Beeby*, 3 E. C. L. R. 341.

It is evident, upon principle, that condonation, from the mere fact of cohabitation, ought not to be implied against the wife to bar her of her remedy, because she is, to a great extent, under the control of her husband.

In this case the evidence shows that, although she cohabited with him after the discovery of his criminal conduct, yet, that it continued to be the cause of disagreement between them, and that she never became reconciled to his original infidelity, and was only content, provided he would cease his improper intercourse. But if the original offence was fully condoned, the evidence is amply sufficient to show that it was subsequently renewed and continued.

The next objection taken to the decree is, that the sum allowed for alimony is unreasonable and excessive, considering the amount and value of the husband's estate.

The decree assumes the value of the husband's estate to be five thousand dollars, and gives the wife one-third of that amount. Considering all the evidence, it appears to warrant the valuation of the husband's estate upon which the decree is based; and then the question is, whether the portion allowed by the decree to the wife was exorbitant.

There appears to be no fixed rule upon this subject, but it depends upon the discretion of the court, to be exercised with reference to an equitable view of all the circumstances of the particular case, the only general rule being, that the wife is entitled to a support corresponding to her rank and condition in life, and the estate of her husband. These principles are recognized by our statute, which provides, that the court may make such allowance " as from the circumstances of the parties and the nature of the case may be fit, equitable, and just." Hutch. 496, § 7.

In applying this equitable rule, it is very generally agreed that it is proper to consider not only the respective pecuniary condi-

Armstrong *v.* Armstrong.

tion of the parties, their capacities for supporting themselves, and many other circumstances touching an equitable appropriation of the property of the husband, but also the demeanor and conduct of the wife during the marriage, as tending either to excuse or to aggravate the offence of the husband. Bishop, § 612. And if, by the criminality of the husband, the wife is driven to dissolve the conjugal tie, and subjected to all the mental sufferings and social disparagement arising from such a position, it is but just that she should receive a liberal allowance from him who has done her such irreparable wrong.

The evidence shows that her conduct as a wife was unexceptionable, and that she is without any means of support. There are no children of the marriage, and the husband has no lawful children to support. He is shown to be an active business man, and capable of providing for himself. Under such circumstances, we consider the allowance of one-third of the value of the husband's estate "fit, equitable, and just." And it is less than has been frequently sanctioned as permanent alimony in England and in this country. Bishop, § 620, and cases there cited.

The only remaining objection is to the decree for the payment of the two sums of money, the separate property of the wife, alleged to have been appropriated by the husband to his use.

As to the small sum of $25, it is admitted that that, being the earnings of the wife during coverture, was the property of the husband absolutely, and therefore that the decree in that particular is erroneous.

As to the other sum of $116, decreed to her for her separate money, it is proved that the husband broke open the wife's trunks after she was driven by him from his house, there being in one of the trunks this amount of money, her separate property, acquired by gift from her relatives; that she afterwards charged him, on several occasions, with taking the money, and he did not deny it. One witness proves that he admitted that he took it. This evidence showed sufficiently that he appropriated the money to his own use.

It is however insisted, that she was not entitled to recover it in this bill, because it was not an incident to the bill for divorce and

alimony.    It was certainly a right which she was entitled to enforce in some form.    She could not assert it by action at law, because she was incapable of suing him at law.    Her remedy, then, for the recovery of her separate property was in equity, and no reason is perceived why she should not unite her several causes of complaint against her husband in one bill, instead of bringing two suits.    Nor was she compelled to wait until she was divorced to bring a suit at law to recover the money.    Her right to recover for her separate property against her husband, in her bill for divorce and alimony, is distinctly recognized in *Lawson* v. *Shotwell*, 27 Miss. 630 ; and it is justified by the equitable rule of preventing multiplicity of suits.    In addition to this, no objection was taken to the bill on this ground by demurrer.

With respect to the sum of $25 the decree is reversed, and in all other respects it is affirmed, and a modified decree accordingly ordered in this court.