622 So.2d 284 (1993)
Nancy BOX
v.
Howell Eugene BOX.
No. 91-CA-1198.
Supreme Court of Mississippi.
July 22, 1993.
*285 Roger H. McMillin, Jr., Sumners Carter & McMillin, New Albany, for appellant.
Pamela Loftin Hall, C. Michael Malski, Carnathan & Malski, Amory, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
SMITH, Justice, for the Court:
A marriage of thirty years between Nancy Box and Gene Box ended in separation in April 1987. In 1988, Nancy filed for separate maintenance and was awarded the use and possession of the parties' home, together with all contents. Gene was ordered to make the house payments and to pay Nancy $900 per month beginning August 1, 1989. Nancy filed for divorce on October 5, 1990. After a hearing was held on October 3, 1991, the Chancery Court of Lee County, Mississippi, granted a divorce to Nancy on uncontested grounds of adultery, and a decree was entered October 12, 1991.
The chancellor awarded Nancy: title to and possession of the home with responsibility for future mortgage payments, taxes and insurance; title to the 1986 Lincoln Towncar; $2,400 per month periodic alimony for 9 years, after which monthly alimony would be decreased to $900 per month; lump sum alimony of $30,000 payable in three annual installments of $10,000; health insurance paid for by Gene; and attorney's fees of $3,108.47. Nancy was to be responsible for the house payments of $1,461.72 with a balance of $103,767.88 remaining on the house loan.
Feeling aggrieved, Nancy Box appeals, contending as follows:
I. THE CHANCELLOR ERRED IN SETTING PERIODIC ALIMONY AT SUCH A LOW AMOUNT.
II. THE LUMP SUM AWARD OF $30,000 WAS GROSSLY INADEQUATE AND CONSTITUTED AN ABUSE OF DISCRETION.
III. THE COURT ABUSED ITS DISCRETION WHEN IT ORDERED AN ARBITRARY REDUCTION IN PERIODIC ALIMONY IN NINE YEARS.
IV. THIS COURT SHOULD AWARD ATTORNEY'S FEES TO NANCY BOX FOR THE PROSECUTION OF THIS APPEAL IN AN AMOUNT EQUAL TO ONE-HALF THE TRIAL COURT'S AWARD.
We agree with the appellant and reverse and remand to the lower court for a redetermination of periodic alimony, lump sum alimony and other matters reflected in this opinion.

FACTS
Nancy Box and Gene Box were married on February 22, 1957. The parties separated in April of 1987. Nancy Box was fifty-six at the time of trial. She grew up in Memphis and graduated from the University of Mississippi in January, 1957. She and Gene were married three weeks later, and lived in Corinth where Gene worked at the Ford dealership with his father. Nancy was a homemaker and, as she put it, "did the June Cleaver." The Boxes have three children: Carol, born November 4, 1958, Cynthia, born March 15, 1961, and Chris, born May 3, 1973.
Nancy Box was active in civic organizations in Corinth. She was in the Junior Auxiliary, serving on the Board for nine and a half years. She also served on the Boards of the American Red Cross, the Community Fund, and the Corinth Welfare Association and did volunteer work with children in special education classes.
The couple built a home in Corinth. In 1969, the Ford agency was sold and Gene pursued other types of employment. In 1970, Nancy took a job with the Alcorn County Department of Welfare as a social worker and stayed until 1973 when she became pregnant with her third child. She quit the job because Gene insisted that she be home with their son.
*286 In 1976, Gene took a job in Memphis with a car dealership and lived there for a year, coming home only on weekends. In the spring of 1977, Nancy drove to Memphis one night a week to take a real estate course so she would have something to fall back on when the older children were in college.
In the summer of 1977, the family sold the Corinth home and moved to Memphis. The opportunity to operate a Danver's Restaurant franchise in Tupelo presented itself and the family moved to Tupelo in the fall of 1977. When they moved to Tupelo, Nancy applied for and was offered a job with the Department of Public Welfare but Gene told her not to take it.
In 1979, the Boxes built the house now occupied by Nancy. They lived together there until April, 1987, when Gene left. While in Oxford, Gene became involved with another woman, Marty Stark, and was still involved with her at the time of the trial.
During the period of separation, Gene built a new home in Tupelo, costing $160-170,000 and also purchased a condominium in Colorado for $43,000. He belonged to two country clubs, Tupelo Country Club and Old Waverly. The initial membership fee to Old Waverly, which he joined after the separation, was $4,000 plus $80.00 per month in dues. Gene averaged $325 in country club expenses per month. He was also a member of The Wellness Center, a health club. The monthly maintenance fee on the condo was $266 and utilities and insurance were an additional $56.50.
Gene Box was 60 years old at the time of trial and in good health. In addition to the Danver's restaurant in Tupelo, he bought the Danver's in Oxford prior to the parties' separation, and subsequent to the separation, the Danver's in Starkville. He also owned real estate in Corinth which was leased to the Ford Motor Company.
Nancy has been diagnosed as having osteoarthritis and has had surgery to replace one joint in her right hand. She anticipated that the same surgery would be necessary for the other hand. She experienced neck and back problems associated with degeneration of the spine. She had difficulty doing certain routine household tasks, such as vacuuming and yard work.
Shortly after the parties separated, Nancy took a part-time job with J.C. Penney Company. She worked for minimum wage plus commission. Her average gross pay per week was $91.88. In 1990, her income was $9,000 which included working full-time between September and Christmas. She had no separate assets, CDs, savings or property other than her interest in the marital dwelling. To pay her legal fees, she borrowed $10,000 from her father and had $2,000 left at the time of trial. Nancy estimated her monthly expenses as $2,509 without the house payment and $4,039 with the payment. She was no longer able to have household help for cleaning and depended on a neighbor to cut her yard.
Gene Box's tax returns for the years preceding the trial showed net business income and total income as follows:

 1987 ...... $150,569 ...... $160,555
 1988 ...... 235,702 ...... 254,096
 1989 ...... 294,253 ...... 325,116
 1990 ...... 155,127 ...... 179,978

The decline in income in 1990 was attributable to the acquisition of the Starkville Danver's operation. There was a $65,905 operating loss for Starkville, net income of $203,012 from Tupelo and $23,700 from Oxford.
A December 31, 1989, Statement of Financial Condition showed assets for Gene of $1,213,028 against liabilities of $558,245 for net assets of $654,783. There was no later statement available and many changes had occurred in Gene's finances since the 1989 statement. The Oxford operation was acquired. The second home was built and the condo purchased. All the properties carried mortgages and there was considerable business debt. Gene's bookkeeper showed his debts as $658,650.58 as of August 31, 1991, including the $103,767.88 debt on Nancy's house.
The Boxes' son Chris was a student at Ole Miss and Gene agreed to provide his tuition and living expenses. In addition to *287 Chris' basic college expenses, Gene was paying a car note of $409.51, fraternity dues, and giving him a monthly allowance of $600. Prior to college, Gene bought Chris $2,469.51 in school clothes and the bookkeeper showed Chris' average monthly expenses on clothes of $312.96 and laundry expenses of $100. Gene was also buying a car for his daughter and son-in-law.

DISCUSSION

I. THE CHANCELLOR ERRED IN SETTING PERIODIC ALIMONY AT SUCH A LOW AMOUNT.
This Court's standard of review of the terms of alimony in domestic relations matters is limited. The chancellor's decision on alimony will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. Tilley v. Tilley 610 So.2d 348, 351 (Miss. 1992); McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987). Further, "[i]n the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." McNally, 516 So.2d at 501, citing Martin v. Martin, 271 So.2d 391 (Miss. 1972).
However, this Court will not hesitate to reverse if we determine that the chancery court's findings were manifestly wrong or an erroneous legal standard was applied. Tilley, 610 So.2d at 351; Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss. 1989); Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983).
This Court considers nine areas when reviewing an award or denial of periodic alimony:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact the wife has free use of the home, furnishings and automobile; and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 152 (1955).
Under the Final Judgment of Divorce, Gene was to pay Nancy $2,400 per month periodic alimony for 108 months after which the periodic alimony would be decreased to $900 per month until her death or remarriage. Nancy was awarded the full use, title and possession of the marital house with her being responsible for the outstanding mortgage. She was also awarded the 1986 Lincoln Towncar. Gene was also required to obtain the highest health care coverage available for Nancy and pay the premiums.
Looking at the nine factors:
(1) Gene is in good health other than a treatable high blood pressure condition. His annual earnings have exceeded $150,000 every year since 1987 and have been as high as $325,000.
(2) Nancy has an arthritis condition that has already required surgery and which prevents her from engaging in certain activities. Her earning capacity, due to her age, health and lack of experience, is limited. She presently earns less than $100 per week as a sales clerk.
(3) In addition to his business income, Gene also receives $17,288 in rental income from his Corinth property. Interest income from his various accounts was $7,563, according to his last tax return. Nancy has no additional sources of income.
(4) Nancy presented a monthly proposed budget of $4,039 including her responsibility for the house payment. The budget items are consistent with the lifestyle she has led and which Gene continues to lead. The awarded amount is less favorable than *288 that under the separate maintenance due to the tax implications of receiving the house payment as alimony rather than its being paid by Gene.
(5) The needs of the child are not in issue. Under the prior agreement of the parties, Gene assumed full financial responsibility for the unemancipated child.
(6) While Gene's personal expenses are high, there is no indication that these can be called "necessary." His expenses include over $300 per month for his Colorado condo and $325 per month for two country clubs. He has lived very well during the period of separation. He will be paying essentially the same under the divorce as he was under separate maintenance. The monthly increase is offset by not having to pay the house payment.
(7) Nancy submitted in her proof that she would need an annual pre-tax income of $60,000 to meet her $4,000 monthly needs. Nancy offered testimony that Gene could provide her with the entire $60,000 at an after-tax cost of only $42,000. Under the existing award, Nancy would possibly have less than $2,000 per month after taxes. After making her house payment she would have less than what she received under separate maintenance or less to pay all her expenses than her son Chris receives as pocket change with all his basic expenses paid.
(8) In the present case, Nancy does not have free use of the home. She will be fully responsible for monthly payments of over $1,400 on a $100,000 mortgage. She testified to numerous repairs on the home which were needed but had not been done. The car she was given is a 1986 Lincoln with over 100,000 miles which needed maintenance.
(9) No other facts and circumstances as shown by the record need to be considered.
As the Court said in Gray v. Gray, 562 So.2d 79, 83 (Miss. 1990), the "chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living." Accord Monroe v. Monroe, 612 So.2d 353, 357 (Miss. 1992) Also, "the only general rule being, that the wife is entitled to support corresponding to her rank and condition in life, and the estate of her husband." Jenkins v. Jenkins, 278 So.2d 446, 449-50 (Miss. 1973), quoting Armstrong v. Armstrong, 32 Miss. 279 (1856). Considering this, the judgment of the court cannot be justified.
In Monroe v. Monroe, 612 So.2d 353 (Miss. 1992), this Court told the chancellor that it shocked the Court's conscience that the chancellor ignored the wife's condition and failed to award periodic alimony. Although alimony was granted in the present case, we are again shocked and again find that the chancellor severely abused his discretion in the matter of granting periodic alimony.
Our guidelines require that the husband be allowed a "decent standard of living." Gene's standard of living certainly surpasses that criteria. These guidelines require a delicate balancing in equity by the chancellor. In this case, the balancing is lopsided in favor of the offending spouse, Gene Box.
In sharp contrast, the support of Nancy was not equitable and just since it was inadequate to maintain her in accordance with her station and condition in life and in harmony with her husband's estate. The proof was clear that Nancy Box's reasonable needs will certainly not be met by the combination of the award made to her and her own earning capacity. Her budget is in keeping with the rule of this Court that she is entitled to lead a life corresponding to the life she led during the marriage. There are items which are not strict necessities but which correspond to the lifestyle she led and which her husband has been leading. The chancellor's award was clearly inadequate under the circumstances and the chancellor should reweigh all the factors and grant a much higher amount under the circumstances. We are compelled to remand this case to the chancellor for determination of an amount of alimony which will adequately maintain Nancy Box in accordance with her lifestyle during the marriage.

*289 II. THE LUMP SUM AWARD OF $30,000 WAS GROSSLY INADEQUATE AND CONSTITUTED AN ABUSE OF DISCRETION.
This Court has stated that following its decision in Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973), "[o]ne or both of two common threads thereafter appear in all of our awards of lump sum alimony. First, the wife had through her efforts been a material economic benefit in the creation of her husband's wealth," such as by quitting her job to help him in his business or profession, or by helping him through college; or second, had been of benefit "in being a dutiful, faithful housewife." Retzer v. Retzer, 578 So.2d 580, 591 (Miss. 1990).
Thereafter, in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1988), the following factors from this Court's previous decisions regarding lump-sum alimony were combined and considered:
1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business. Tutor v. Tutor, 494 So.2d 362 (Miss. 1986); Schilling v. Schilling, 452 So.2d 834 (Miss. 1984);
2) A long marriage. Jenkins v. Jenkins, 278 So.2d 446 (Miss. 1973); Tutor and Schilling, supra;

3) Where recipient spouse has no separate income or the separate estate is meager by comparison. Jenkins, Tutor and Schilling, supra;

4) Without the lump sum award the receiving spouse would lack any financial security. Abshire v. Abshire, 459 So.2d 802, 804 (Miss. 1984).
Retzer v. Retzer, 578 So.2d at 592, citing Cheatham at 438.
Nancy testified that she worked prior to the birth of her son and that it was at Gene's insistence that she did not continue working or did not take another job after the family moved to Tupelo. Nancy became a full-time homemaker. Being a homemaker is pursuing a legitimate profession which makes a substantial contribution to a marriage. In addition to her duties as homemaker, Nancy was also actively involved in a number of worthwhile community projects. She also testified to seasonally decorating the restaurant.
The Boxes' marriage of thirty years would certainly be classified as a long marriage. It is not disputed that Gene's adulterous affair was the cause of the dissolution of the marriage. There is no indication that Nancy was not a dutiful, faithful wife.
As previously discussed, Nancy had no separate income other than from the part-time job at Penney's and has no separate estate. Gene's estate is by comparison considerable.
Even with this lump-sum award, Nancy's financial future seems uncertain. Although she has health insurance, she anticipates considerable future medical expenses and also household and automotive repairs which could quickly wipe out this award. She also has a $10,000 debt for legal fees not fully covered by the court awarded attorney's fees.
Considering the proof under the established criteria, it seems abundantly clear that Nancy Box meets the four factors set out above to be entitled to lump-sum alimony. The only question is the amount of the award.
In Reeves v. Reeves, 410 So.2d 1300, 1302 (Miss. 1982) this Court said that it "would not have considered a lump sum award of $100,000.00 or ten percent (10%) of the husband's net estate unreasonable or unfair under the undisputed facts in this case. We are not suggesting a ceiling or the actual amount the chancellor should award, but we do intend to signal some sense of proportion in cases of this nature." Unfortunately, there is no magic formula which can be applied to each case. An award of 25 percent or more could be justified in this case. The chancellor should carefully study the current financial state of the husband and make a fair and equitable determination.
The award of $30,000 is clearly unreasonable and unfair. Under the outdated financial *290 statement, Gene's net worth was placed at over $600,000. With the acquisition of the additional restaurants and other properties, his worth has probably increased. While Mississippi is not a community property state, we recognize "the serious responsibility of a chancellor to make intelligent and fair provision for the wife." 410 So.2d at 1303. To say that this was not done is an understatement. In actuality, it shocks the conscience of this Court that the chancellor seemed to ignore the many factors in the record and we hold that he is manifestly wrong in such a low award of lump sum alimony.
We reverse and remand the lump sum award to the chancellor for an increase in the award.

III. THE COURT ABUSED ITS DISCRETION WHEN IT ORDERED AN ARBITRARY REDUCTION IN PERIODIC ALIMONY IN NINE YEARS.
The chancellor's award of periodic alimony provided that the $2,400 in monthly alimony would be reduced to $900 after 108 months. Because we are remanding the entire award of periodic alimony to the chancellor for redetermination, it is not necessary for us to linger long on this assignment. We would however point out to the chancellor that under the facts of this case such a reduction cannot be factually justified and amounts to an abuse of discretion. Nancy presented to the lower court her needs, and there was no indication that these would decline in the future.
We hold that a chancellor cannot reduce an award of periodic alimony unless he gives specific reasons for that reduction which are supported by the record. Normally, the award of periodic alimony continues until the death or remarriage of the spouse whom it is awarded. Where as here the award was too low to begin with, a reduction made without clearly articulated reasons and which is not supported by the record amounts to a severe abuse of discretion. We trust this error will not be repeated on remand.

IV. THIS COURT SHOULD AWARD ATTORNEY'S FEES TO NANCY BOX FOR THE PROSECUTION OF THIS APPEAL IN AN AMOUNT EQUAL TO ONE-HALF THE TRIAL COURT'S AWARD.
The appellee has not argued against this award.
The amount awarded is $1,554.23.

CONCLUSION
Under the facts of this case, the chancellor erred in setting periodic alimony too low, in reducing it after nine years without written reasons supported by the record, and in not providing for an equitable amount of lump-sum alimony. The lump sum and periodic alimony payments should be increased substantially in accordance with the evidence and discussion of the law set out within this opinion. Balancing a husband's right to live as normal a life as possible with a decent standard of living and a wife's entitlement to support corresponding to her rank and station in life is occasionally difficult, but not impossible. Gene Box certainly has more than sufficient assets and earning capacity, and his life style continues to be far in excess of what one might consider to be a mere decent standard of living. Mr. Box must adjust downward his extravagant life style, and Mrs. Box must adjust and attempt to assist in her own support. The chancellor should carefully review the needs of the wife to live her life in a manner comparable to that which she enjoyed during the marriage and to consider her future needs. We trust the chancellor to increase lump sum and periodic alimony equitably in accordance with this opinion. The appellant should be awarded attorney's fees in the amount of $1,554.23.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
*291 DAN M. LEE, P.J., concurs in results only.
JAMES L. ROBERTS, Jr., J., not participating.