BARNES, J., for the Court:
¶ 1. In this divorce action, Donna Proctor appeals the judgment of the DeSoto County Chancery Court, raising three issues. Donna claims the chancellor erred in the division of the marital property because she failed to subtract $35,000 from Douglas (Doug) Proctor’s share of his 401(k)[1] retirement account, and instead deducted it from the balance’s total. (The $35,000 had been previously deducted from his account for delinquent medical and attorney’s fees he had not paid Donna.) She also claims the chancellor failed to address a pension account in the property distribution. Additionally, Donna argues that her alimony award is inadequate, and she should have been awarded lump-sum alimony. Finally, Donna contends the chancellor erred in reducing the amount of her attorney’s fees and expenses. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶2. Doug and Donna married in 1979 and have two grown children. Before they separated, the couple lived in Hernando, Mississippi. Doug has worked for Delta Airlines (Delta) since 1986. Since approximately 2005, Doug has been living and working in Singapore. At the time of trial, he worked as an airline quality-control manager. His W-2 from 2009 showed gross wages of $148,000, but in 2011 his wages dropped to $87,972. He works twenty days straight, and then has sixteen days off. In Singapore, he resides in a hotel and is paid per diem for his days of work there. On his days off, he is free to leave Singapore, but he must pay for his own living expenses. Donna, who is approximately fifty years old, suffers from severe depression and anxiety, for which she has been hospitalized and is on medication. She has been a homemaker for most of the marriage, and at the time of separation, had no other form of support besides Doug’s income.
¶ 3. The parties separated in July 2007, and Donna filed for divorce. The chancery court ordered Donna to have exclusive use of the marital home, and Doug to pay the mortgage. Doug was to continue to provide health insurance for Donna, and pay her temporary support of $2,250 per month. During the divorce trial in January 2009, Donna moved to amend the pleadings and to add a complaint for separate maintenance. The chancery court granted the amendment and awarded Donna separate maintenance, requiring Doug to pay Donna $2,000 per month,[2] pay the mortgage of $937 per month, provide Donna’s health insurance, pay her medical expenses not covered by insurance, and pay her attorney $10,000 in partial attorney’s fees. Each party also received a partial distribution of $37,000 in assets from a joint marital savings account. Doug filed a petition to terminate the separate main *618 tenance, which was denied by the chancery court on August 3, 2010.
¶ 4. In September 2010, Doug moved to Tennessee and filed for divorce there. In October 2010, Donna filed an amended complaint for divorce based on several grounds in the DeSoto County Chancery Court.
¶ 5. In April 2011, the court entered an order of contempt against Doug in the separate-maintenance action because he had not paid the attorney’s fees and medical bills as ordered on August 3, 2010; the contempt order required him to withdraw $35,000 from his Delta 401 (k) account to pay these delinquent expenses.
¶ 6. In August 2011, a trial was held on the divorce action.[3] The chancellor granted Donna a divorce on the ground of adultery and ordered Doug to pay $1,500 per month in permanent-periodic alimony for eight years, when it would then be reduced to $500 per month. Doug was also ordered to provide health insurance for Donna under his employer’s COBRA plan for the maximum time allowed. Donna was to be responsible for her medical bills not covered by insurance.
¶ 7. The court also divided the marital property. Essentially, the two main marital assets were the marital home and Doug’s 401 (k) account. The marital home was appraised at $240,000, with a mortgage balance of $104,711.44 and a monthly mortgage payment of $923.72. The marital home was ordered to be sold, with Doug to pay the mortgage until then. If the house did not sell within a year, the court would readdress the mortgage payments at that time. Doug’s 401 (k) account had a balance of $215,228.02 in April 2011, before the court ordered the $35,000 to be withdrawn by Doug to pay for expenses he owed. Chancellor Cobb specifically ordered the $35,000 to “be taken off of the top” of this amount, and the remaining balance of $180,228.02 to be divided equally between the parties.
¶ 8. A separate hearing was held on attorney’s fees, and a final judgment of divorce was entered on May 1, 2012. That same day, the court also denied Donna’s motion to reconsider. Donna timely appealed.
STANDARD OF REVIEW
¶ 9. The standard of review in domestic-relations cases is limited. The appellate court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.... For questions of law, [the] standard of review is de novo.” In re Dissolution of Marriage of Wood, 35 So.3d 507, 512 (¶ 8) (Miss.2010) (quoting Duncan v. Duncan, 774 So.2d 418, 419 (¶ 4) (Miss.2000)).
ANALYSIS
I. Property Division
¶ 10. Donna argues that in dividing the 401(k) account, the chancellor erred by not subtracting $35,000 from Doug’s share and adding it to her share, instead of taking it “off of the top.” Also, Donna claims the chancellor failed to make any findings regarding Doug’s pension with Delta, valued at $7,058.72.
¶ 11. The distribution of marital assets will be affirmed if “it is supported *619 by substantial credible evidence.” Bowen v. Bowen, 982 So.2d 385, 393-94 (IT 32) (Miss.2008). First, the chancellor must determine whether the parties’ assets are marital or nonmarital. Craft v. Craft, 825 So.2d 605, 608 (¶ 11) (Miss.2002). Assets accumulated during the marriage are considered marital and are subject to equitable distribution. Id. (citing Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994)). Second, the assets will be equitably divided according to the factors set out in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Craft, 825 So.2d at 608 (¶ 11).
¶ 12. In the April 2011 contempt order, which was entered under the separate-maintenance action and by a different chancellor (Judge Lynchard), Doug was “permitted to withdraw up to $35,000 from his share of the assets” (either stock, retirement account, 401(k), deferred compensation, or IRA) to pay Donna’s delinquent attorney’s fees and medical bills, which he had been ordered to pay in August 2010.[4] In the divorce action, Chancellor Cobb took judicial notice of this order, among others, in her final judgment; however, she ordered the $35,000 “be taken off of the top,” and the remaining balance of the 401(k) account be divided equally. Additionally, at the divorce hearing, the chancellor was very specific in her ruling about the 401(k) distribution:
I want Mr. Proctor’s 401K to be divided half and half. I know there was testimony that he has taken some funds out of that 401K ... to pay some of the obligations that he has been required to pay. But nonetheless, ... I have taken all of that into consideration and I am going to say that his 401K needs to be divided equally at its present value ... [as of the August 18, 2011 hearing].
¶ 13. Donna does not dispute the application of the Ferguson factors on this matter. Instead, she argues that the ruling on the $35,000 is contrary to the prior chancellor’s April 2011 contempt order in the separate-maintenance action, which stated the $35,000 would be withdrawn from “his share of the assets.” Indeed, there does appear to be an inconsistency.
¶ 14. The prior chancellor (Judge Lynchard) had the authority to order the $35,000 be taken from Doug’s share of the assets; however, he was not ruling on the distribution of marital assets, and could not bind the hands of the subsequent chancellor (Judge Cobb) in a different cause of action. Chancellor Cobb was free to take the rulings of the prior chancellor on the separate-maintenance proceeding into consideration in distributing the marital property in the divorce action and reject it. She found the 401 (k) account should be equally divided after the deduction of the $35,000. Had she not done so, Chancellor Cobb may well have assigned other assets to Doug to make up for the difference, as her issue was equitable, not equal, distribution of assets.
¶ 15. Moreover, it was not inequitable for Chancellor Cobb to deduct the $35,000 “off of the top” of the 401(k). Originally, this money was deducted from Doug’s 401(k) to pay $21,831.43 of Donna’s attorney’s fees in the separate-maintenance action. “Attorney’s fees may only be awarded to a party who has shown an inability to pay his or her own fees.” Evans v. Evans, 75 So.3d 1083, 1089 (¶ 22) (Miss.Ct.App.2011) (citing Voda v. Voda, *620 731 So.2d 1152, 1157 (¶29) (Miss.1999)). We presume that, at the point in the separate-maintenance proceedings that Judge Lynchard awarded Donna attorney’s fees, she did not have assets sufficient to pay attorney’s fees. However, at this point in the divorce proceedings, Donna has the ability to pay her share of the attorney’s fees by “taking [these fees] off of the top” of Doug’s 401(k) account, and dividing the remainder equally. We see nothing “inequitable” in Chancellor Cobb’s distribution of the 401 (k) account. The ruling on the 401(k) account was supported by substantial evidence, and we cannot find error.
¶ 16. Regarding the pension worth $7,058.72, Donna claims the chancellor failed to classify, divide, or address it in any way. This statement is incorrect. In her ruling from the bench, the chancellor stated that besides the 401(k), the parties could have any other accounts solely in their names — this would include the pension. Additionally, in the final judgment, the chancellor stated that all other assets (excluding the ones discussed), whether marital or not, would belong to the party who held them in his/her possession or control.
II. Alimony
¶ 17. Donna argues that the alimony award was inadequate, and she should have been awarded lump-sum alimony. Additionally, she claims reversal is mandated because the chancellor did not make an on-the-record analysis of all of the Armstrong factors for alimony. Further, Donna states the chancellor was using an inappropriate “blend” of alimony and property-distribution factors in her findings. Lastly, Donna argues that the chancellor’s “arbitrary reduction in alimony” after eight years is also grounds for reversal.
¶ 18. “In the case of a claimed inadequacy ... of alimony, [the appellate court] will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993) (citing McNally v. McNally, 516 So.2d 499, 501 (Miss.1987)). In determining whether to award permanent-periodic alimony, the chancellor must analyze the factors set out in Armstrong, 618 So.2d at 1280:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.
The chancellor must consider this test on the record, or it is manifest error. Lowrey v. Lowrey, 25 So.3d 274, 280 (¶ 7) (Miss.2009) (citing Armstrong, 618 So.2d at 1280). However, this Court has stated that “[i]n examining these factors, the chancellor may consider them as an ‘overall combination’ and need not individually list each one.” Gable v. Gable, 846 So.2d *621 296, 300 (¶ 16) (Miss.Ct.App.2003) (quoting Hoggatt v. Hoggatt, 766 So.2d 9, 12 (¶ 9) (Miss.Ct.App.2000)).
¶ 19. The chancellor awarded Donna “permanent-periodic alimony” of $1,500 per month for eight years (beginning December 2011), with the amount then reduced to $500 per month. This amount is in addition to Doug’s paying the mortgage for at least a year, unless the marital home sold, and paying Donna’s COBRA health insurance for as long as possible. From the bench, the chancellor stated that she realized Doug “was going to have to cut back for a little while because I know I am putting it on him pretty heavy right now.”
¶20. The evidence presented at the divorce trial related to the Armstrong factors showed the following. Doug listed on his Rule 8.05 financial-declaration form[5] that his net monthly income after taxes and insurance was $6,771.46. Included in this amount is his per diem income of $68 a day while in Singapore and $33 a day while in the United States, paid only on the days he works. He reported expenses of $5,180, including his separate-maintenance payment and marital-home mortgage. With credit card and loan payments, his total expenses are $7,273.77. Doug has $24,000 in credit-card debt.
¶ 21. Donna reported on her Rule 8.05 form that her post-tax income from her $l,500-per-month support was $1,401.41, with monthly living expenses of $4,381.72. Her reported monthly expenses included certain items that Doug paid, such as the mortgage ($923.72) and COBRA insurance ($400). They also included her school tuition ($543), although she had applied for and was expected to receive a federal loan. Donna’s expert witness, psychologist Dr. L.D. Hutt, testified that when he interviewed her in 2008, due to her mental conditions, Donna would not be able to “maintain substantial gainful employment in a standardized work environment.” In his opinion, she would be considered “disabled” under the Social Security Administration criteria if she were to apply, but she could not as she has not worked a sufficient time. Donna testified she had no other sources of income besides Doug’s temporary support.
¶ 22. From the bench, the chancellor made the following on-the-record findings on the Armstrong factors. At the time of trial, Doug was fifty-one years old, and Donna was forty-nine. The parties had been married for thirty-two years, which was a considerable length of time, even though they have been separated for a while and Doug was under the separate-maintenance order. Donna remained in the marital home, and there was “quite a discrepancy” in their earnings, earning capacity, and expenses. Donna’s only income at the time was from Doug — her separate-maintenance award of $1,500 per month. '
¶ 23. Alternatively, Doug has been employed by Delta for quite some time. He has a good job and salary working overseas. In addition to his paycheck, he receives a per diem to offset his living expenses in Singapore. Doug was indisputably guilty of adultery, and is romantically involved with a woman in Singapore. He is also fostering her children and has plans to adopt them. The Proctors’ children are grown, but Doug helps support them.
¶ 24. There was also a disparity in the parties’ health. Donna has been “very ill” for quite some time with some “mental and emotional issues.” Her illness has been aggravated by the separation, and has hurt her “ability to perform regular work” and *622 some of her own daily “care giving needs.” Dr. Hutt testified about Donna’s mental issues. It was noted Donna has been going to community college, “trying to improve her situation.” She is working on an accounting degree. She has been helping her attorney at his law office working on her own and other cases. The chancellor stated that she thought Donna is “being rehabilitated,” and that she anticipated her “getting better” and “being able to do some things for herself,” but at the present time, she cannot.
¶ 25. The parties’ main assets were the marital home and the 401(k) account. The chancellor found no evidence of any “wasteful dissipation of assets” by either party, with the possible exception of $500 per month Doug was paying for his overseas “foster children.” The chancellor suggested that once the marital home was sold, with Donna’s share of the proceeds she could buy something “more manageable” than the couple’s current 2,800-square-foot home on one and one-half acres of land. The chancellor stated that the standards of living during the marriage and after, as well as the tax consequences of the support order, were taken into consideration in making her determination for alimony.
¶ 26. The award of permanent-periodic alimony was supported by substantial evidence. The award does not “shock the conscience” in inadequacy, as Donna suggests. Further, there is no error in the chancellor’s awarding permanent-periodic alimony over lump-sum alimony. The chancellor has substantial discretion in reaching a decision in these matters that is both “equitable and fair to both parties.” See Seale v. Seale, 863 So.2d 996, 999 (¶ 14) (Miss.Ct.App.2004). We find that she did so.
¶ 27. Further, there is no merit to Donna’s argument that the chancellor did not make a proper on-the-record Armstrong analysis. It is apparent the chancellor went to great lengths to analyze adequately the factors in her ruling from the bench. Further, her discussion of the alimony and property-distribution factors together was completely proper. “All property division ... [and] lump sum or periodic alimony payment ... should be considered together. ‘Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce.’ ” Lauro v. Lauro, 847 So.2d 843, 848-49 (¶ 13) (Miss.2003) (quoting Ferguson, 639 So.2d at 929).
¶ 28. Finally, the chancellor’s reduction in alimony after eight years was not “arbitrary,” as Donna claims. Donna cites Box v. Box, 622 So.2d 284, 290 (Miss.1993), in support of her argument. The Box court held that “a chancellor cannot reduce an award of periodic alimony unless [she] gives specific reasons for that reduction which are supported by the record.” Id. Here, the chancellor explained that the $1,500 alimony for eight years “will allow [Donna] time to get on her feet, to get through with her education,” after which the alimony would be reduced to $500 per month. We find no error with this ruling, or the manner in which it was made.
¶29. In conclusion, the chancellor did not abuse her discretion in awarding Donna permanent-periodic alimony.
III. Attorney’s Fees
¶ 30. Donna argues she is entitled to a full award of attorney’s fees, and the chancellor should not have reduced her award by $22,062.20.
¶ 31. After the divorce trial, a separate hearing was held on attorney’s fees. Donna submitted to the court $46,196.72 in attorney’s fees and expenses. Her attorney reported 160 billable hours at $150 an *623 hour, for a total of $24,000. Expenses of $22,196.72 included $11,062.20 in fees for. a lawyer in the Tennessee divorce action, which Doug had filed in September 2010. Donna had an attorney expert witness testify that her attorney’s fees were reasonable and customary, as did Donna herself and her own attorney. A paralegal for Doug’s attorney testified about Donna’s legal bill, as well as Doug. Doug’s counsel objected to the inclusion of the Tennessee legal fees.
¶ 32. The chancellor ruled that the fees were reasonable under the McKee factors,[6] and that Donna had some ability to pay her legal fees, because she had been working at her attorney’s office “in an effort to pay some of her attorney’s fees by services in kind.” Accordingly, the chancellor deemed Donna responsible for $11,000 of her attorney’s fees. Additionally, the chancellor found it improper for Doug to have to pay Donna’s attorney’s fees for the Tennessee action. Therefore, Donna was ordered to be responsible also for the $11,062.20 in Tennessee attorney’s fees, and Doug was required to pay her remaining fees.
¶ 33. On appeal, Donna somewhat contradictorily argues that the chancellor “arbitrarily” reduced her attorney’s fees by $22,062.20, and then proceeds to explain the two reasons stated by the chancellor for doing so — Donna’s inability to pay the entire fee, and the lack of propriety in awarding attorney’s fees for Doug’s action in Tennessee. Donna also claims that she should not have to pay the attorney’s fees for a Tennessee attorney she was forced to employ because her husband filed suit in Tennessee.
¶ 34. The standard of review regarding an award of attorney’s fees is abuse of discretion. Miss. Power & Light Co. v. Cook, 832 So.2d 474, 478 (¶ 7) (Miss.2002). Accordingly, the reviewing court will be “reluctant to disturb a chancellor’s discretionary determination whether to award attorney’s fees or the amount of any award.” Evans, 75 So.3d at 1089 (¶ 22) (citing Smith v. Smith, 614 So.2d 394, 398 (Miss.1993)). “Attorney’s fees may only be awarded to a party who has shown an inability to pay his or her own fees.” Id. (citing Voda, 731 So.2d at 1157 (¶ 29)). When awarding attorney’s fees, a chancellor should make specific findings regarding the recipient’s ability to pay. Id. (citing Hankins v. Hankins, 729 So.2d 1283, 1286 (¶ 13) (Miss.1999)). The chancellor should apply the McKee factors to determine the proper amount of the award:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
Id. (quoting McKee v. McKee, 418 So.2d 764, 767 (Miss.1982)).
¶ 35. Donna claims that reducing her attorney’s fee award by $11,000 allegedly due to her assisting her attorney was error. At the hearing, Donna testified that she performed work on her case for her attorney, such as making charts and graphs, so that she would not be billed for these tasks, and thereby reduced costs. Her attorney corroborated this fact. The crux of Donna’s argument appears to be her ability to pay her fees was already taken into account because she was not *624 billed for this work. Yet Donna’s working on her case was not the only factor cited by the chancellor when she concluded that Donna could pay some, but not all, of her attorney’s fees. The chancellor noted Donna has received assets and income during the divorce by which she could pay some of her attorney’s fees.[7] The chancellor’s ruling was supported by substantial evidence. Further, it was not unreasonable for Donna to pay for her Tennessee attorney’s fees; Donna could have submitted the matter to the Tennessee court for consideration. Accordingly, the chancellor did not abuse her discretion regarding this issue.
¶36. Donna makes a cursory request that this Court award her attorney’s fees on her appeal, in an amount equal to one-half of the amount that was awarded by the chancery court, according to Grant v. Grant, 765 So.2d 1268, 1268 (¶ 19) (Miss.2000), and Durr v. Durr, 912 So.2d 1033, 1041 (¶ 30) (Miss.Ct.App.2005). The distinguishing feature of these cases, however, is that the appellee was requesting attorney’s fees for defending the case on appeal, not the appellant prosecuting the appeal, unsuccessfully. Therefore, we deny Donna’s request.
CONCLUSION
¶ 37. The chancellor’s decision was equitable and supported by substantial evidence. Therefore, the judgment of the DeSoto County Chancery Court is affirmed.
¶ 38. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND IN THE RESULT.

. See. 26 U.S.C. § 401(k) (2006).

. The amount was later reduced to $1,500 per month because Doug was awarded custody of the remaining minor child.

. The parties' separate maintenance and divorce actions have been heard by three different chancellors over the course of five years. The divorce proceedings were heard by Chancellor Vicki Cobb. The prior separate-maintenance-action proceedings were heard by Chancellors Mitchell Lundy Jr. and Percy Lynchard Jr.

. In the April 2011 contempt order, Doug was found in contempt for failure to pay certain dental and out-of-pocket medical expenses totaling $2,316.24. Further, he was assessed with $4,977.42 in attorney's fees and expenses for Donna’s attorney through February 2011, as well as $16,854.01 in prior attorney's fees for Donna in the separate-maintenance action, and $201.20 in a shortage on his support payment.

. See UCCR 8.05.

. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982).

. In Doug's brief, he notes that Donna received a total of $37,000 from the joint marital savings account in 2007, and one-half of Doug's 401(k) account, or approximately $90,000, as well as the fact she will receive one-half the proceeds from the sale of the marital home.