## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-01263-SCT

*CONNER PARSONS*

*v.*

*JOYCE ELAINE McCAFFREY PARSONS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/93 |
| TRIAL JUDGE: | HON. DONALD B. PATTERSON |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN R. REEVES |
| ATTORNEY FOR APPELLEE: | T. MACK BRABHAM |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 7/25/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/15/96 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. On September 9, 1993, a divorce was granted by the Chancellor of the Chancery Court of Lincoln County, to Joyce Elaine McCaffrey Parsons, (Joyce) from Conner Parsons, (Conner) on the grounds of cruel and inhuman treatment and awarded her, *inter alia*, six hundred dollars ($600) per month in permanent alimony. Aggrieved, Conner Parsons appeals to this Court the single issue:

> **Whether or not the trial court erred in awarding the wife $600 per month in permanent periodic alimony after a three and a half year marriage when the wife did not testify that she was unable to work and did not present evidence regarding her need for alimony?**

### STATEMENT OF THE FACTS

¶2. Conner and Joyce were ages 66 and 56, respectively at the time of the marriage. At the time of the divorce trial, they were ages 70 and 60, respectively. Prior to the marriage, Joyce worked full-time as a cashier at Baker's Pharmacy. She made about $8,839 the last year she worked at the pharmacy. She testified that she quit her job upon Conner's request when she married him. She and Conner both owned homes. They lived in his home and both continued to pay the mortgage on her home. During the marriage they purchased a $16,000 motor home which the Court ordered Conner to pay Joyce half of the purchase price or alternatively, for the Clerk to sell it and the profits be split

equally. Joyce had debts totaling $1,824 on her home and Conner owed just over $1,000 for a heating and cooling system for his house.

¶3. Conner was diagnosed with dementia on December 27, 1991, and began taking medication. Joyce testified that his deterioration and bad temper were especially obvious in situations involving driving. She gave other examples of erratic behavior. Further examination in September 1992 led to a diagnosis of Alzheimer's. Joyce said that Conner's personality began to change during the years she was married to him and he became quite paranoid.

¶4. Conner testified that his health began to fail after the marriage and the medication he took made him worse. He was hospitalized twice and had nerve problems. He said everything he ate that Joyce cooked made him sick, that she continually pressured him to see a doctor, and that she gave him lots of medication. He said that she did not want him driving his vehicles and she would claim that whatever medicine that she was giving him would interfere with his ability to drive. He felt like she was attempting to make him sick or poison him. She would fix different food for him, claiming that she was on a diet. He had not experienced any problems with his stomach since she left. She said that she was a good cook and that she never tried to poison him, but did try to always have food items he liked, such as sweets. He said she often tried to get him to buy her and her granddaughter a car, which she denies, and that she encouraged him to give his furniture to her son from a previous marriage.

¶5. After she told Conner she was leaving him, Joyce withdrew half of what was in their joint checking account and joint savings account, $8,493.50 and $1,000, respectively. Conner received Social Security, a shipyard check and a Federal Longshoreman and Harbor Workers disability check all totaling $2,713.39 each month. In summation, Conner felt like she "was trying to prove that I wasn't fit to take care of my own business." Though undocumented with receipts, Conner presented figures on cross-examination that showed his expenses per month totaling $2,250.54. Joyce presented a financial declaration that revealed no income and monthly expenses totaling $1,264.37.

¶6. Joyce testified that while he was in the hospital the last time, Conner began ordering her around, not wanting her out of his sight. She said that his refusal to see the psychiatrist that had visited him in his hospital room and his refusal to get any help for his sickness caused her to take the drastic step of leaving him. She denied marrying him for what she "could get out" of the marriage. Joyce testified that Conner had promised her "the world with a fence around it. We would travel, I wouldn't have to work anymore and he didn't want his wife working." Since he had a car and a truck, they sold her car and part of the money went into their bank account. She then testified about his behavior toward her throughout the marriage and to his bouts of confusion and disorientation. Joyce testified that Conner suffered from incontinence and paranoia. His erratic, irrational, behavior led her to leave him. She claimed that when he filed for divorce, she had no alternative but to file for divorce in return. Conner failed to prove his grounds for divorce and the chancellor granted Joyce a divorce at the conclusion of all testimony.

## LEGAL ANALYSIS

**Whether or not the trial court erred in awarding the wife $600 per month in permanent periodic alimony after a three and a half year marriage when the wife did not testify that**

**she was unable to work and did not present evidence regarding her need for alimony?**

¶7. Whether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor. *Creekmore v. Creekmore*, 651 So. 2d 513, 517 (Miss. 1995); *Cherry v. Cherry*, 593 So. 2d 13, 10, (Miss. 1991). We will not disturb the award on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. *Creekmore v. Creekmore*, 651 So. 2d 513, 517 (Miss. 1995); *McNally v. McNally*, 516 So. 2d 499, 5010 (Miss. 1987).

¶8. The factors to be considered by the chancellor in awarding alimony are as follows: (1)the income and expenses of the parties (2)the health and earning capacities of the parties (3)the needs of each party (4)obligations and assets of each party (5)length of the marriage (6)the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care (7)age of the parties (8)the standard of living of the parties, both during the marriage and at the time of the support determination (9)tax consequences of the spousal support order (10)fault or misconduct (11)wasteful dissipation of assets by either party and (12)any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. *Etheridge v. Etheridge*, 648 So. 2d 1143, 1146 (Miss. 1995); *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

¶9. At age 70, Conner suffers from Alzheimer's disease and his source of financial support is social security, retirement, and disability totaling $2,713.39. His expenses total about $2,250.54 a month. He is relatively debt free.

¶10. On cross-examination, several items on Conner's itemization of his monthly expenses were highly questionable, undocumented, thus somewhat suspect. In fact, even on their face, they were clearly not expenses. Conner listed $500 per month as "investment in bank for emergency." He claimed that's money "I try to put in, keep along with my savings." This amount is clearly savings as opposed to an expense, thus Conner actually had $1,000 more per month in income over expenses. There were additional questions raised about $400 worth of other alleged expenses. Conner claimed $200 per month as traveling expense, but he had no receipts, canceled checks or other proof he actually incurred such expense. He claimed $l00 per month in gift expenses, but again had no receipts or canceled checks or other proof documenting such expenses for gifts. Nor did Conner have proof of the claimed $100 per month donation to the church he testified that he occasionally attended. These expenses, if indeed they really are, as shown by this record, could be categorized as unnecessary. In *Box v. Box*, 622 So. 2d 284, 288 (Miss. 1993), in examining expenses for a Colorado condo and two country clubs claimed as expenses by Mr. Box, this Court stated, 'there is no indication that these can be called "necessary."' As in *Box*, we find these expenses, suspect though they are, to not be necessary. Thus, the Chancellor heard testimony that revealed that Conner had $500 that clearly was not an expense and another $400 that was highly suspect as an alleged expense and not necessary. There was sufficient proof before the Chancellor that Conner's expenses were not nearly as high as suggested by his financial declaration or his testimony, thus enabling Conner to pay some reasonable sum of alimony to Joyce who had a broken commitment from Conner, no income, and $1264.37 in monthly expenses.

¶11. Conner contends that there was not sufficient evidence at trial concerning Joyce's ability to gain employment or establish her earning capacity. Before her marriage to Conner in 1989, Joyce had

been single since 1974. She had worked at the pharmacy almost three years, and, before that, she worked nine years for an insurance company. She was supporting herself when she met Conner. She gave that employment up at Conner's insistence and became a housewife, which is a factor that may be considered by the chancellor in determining alimony. *Box v. Box* 622 So. 2d 284, 289 (Miss. 1993); *Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988).

¶12. In *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), this Court issued guidelines for chancellors to consider including, "[c]ontribution to the stability and harmony of the martial and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage." At the time of the divorce, Joyce was not employed. Due to her role as the dutiful housewife, Joyce believed that she was entitled to alimony. As she put it, "considering what I've been through, I feel like I'm due something and what he told me at the beginning before we married, that he didn't want me to work, that he would take care of me, I wouldn't have anything to worry about, I wouldn't have to worry about bills, we would have a life of leisure traveling and whatever - I took him at his word." The chancellor found that at 60 years of age, "it would be difficult, if not impossible, for her to re-enter the work force. She had lost the benefit of the bargain that she made, she will not be able to maintain her standard of living without alimony."

¶13. Conner is asking this Court to reevaluate the circumstances. He claims that this was not a long marriage where the wife gave up education and/or career opportunities in order to care for the husband and children of the marriage. She was 56 at the time of the marriage and 60 at its end, had three adult children and has been out of the labor market for three and a half years. Conner mistakenly argues that there was no proof in the record of Joyce's needs, referring the Court to the front page of her financial declaration, Exhibit 3. The dissent, also assuming no support in the record, makes the same mistake. The financial declaration is a front and back, single page document which only need be turned over to reveal the itemized list of Joyce's monthly needs which total $1,264.37. Conner argues that *Anderson v. Anderson*, 249 Miss. 1, 162 So. 2d 853 (1964) is applicable here. *Anderson* held that since no evidence pertinent to the need for alimony was presented, then the court could not award alimony. *Anderson*, 249 Miss. at 4, 162 So.2d at 855.

¶14. There obviously was evidence in this record offered by Joyce concerning her alimony needs. The chancellor could rely upon this evidence. In *Box,* where the chancellor ignored the wife's itemized needs, the Court noted, "Nancy presented to the lower court her needs, and there was no indication that these would decline in the future." *Box,* 622 So. 2d at 290. Joyce argues that she was entitled to some undefined financial security because of her marriage and her responsibilities as his wife. She points to Conner's promises to take care of her and his insistence that she give up her job because he did not want his wife to work. As in *Box*, she itemized her needs and there was no indication the needs would decline in the future. She did not testify as to any unsuccessful attempts to find work that would have more clearly indicated that she was, in the chancellor's words too old to "re-enter the work force." Regardless, Joyce had lost the benefit of her bargain made at the time of marriage. We cannot say that the chancellor was manifestly in error in concluding that she would have difficulty finding employment due to her age.

¶15. The Chancellor specifically stated that he had considered all of the factors in *Brabham v. Brabham*, 226 Miss. 165, 84 So. 2d 147 (1955). The court heard testimony regarding the parties' health, earning capacity, entire sources of income, financial assets , liabilities, and itemized monthly

expenses. The court also had heard previous testimony concerning all these factors at a temporary hearing in which the chancellor originally granted the $600 per month alimony.

¶16. The chancellor considered the martial assets and appears to have equitably divided those assets and considered fully each spouse's assets brought into the marriage. *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). This Court, however, in *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994), citing the *Ferguson* factors as guidelines, stated, "If there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." *Id.* Obviously, here however, the chancellor found that although he had equitably divided the parties' assets, such division was inadequate to provide for Joyce. Joyce had significant monthly expenses, but absolutely no income, thus, no means of paying these expenses. There was sufficient evidence presented to support the chancellor's decision. The award of periodic alimony was not against the overwhelming weight of the evidence nor manifestly in error.

## CONCLUSION

¶17. The Chancellor stated that he had considered all of the *Brabham* factors. Although Conner argues otherwise, Joyce did put an itemized list of expenses in evidence. The chancellor could have arguably determined from the testimony and the record that she exhibited financial need and was due periodic alimony. She was gainfully employed at the commencement of the marriage and terminated her employment at Conner's insistence, and bargained upon his promise to provide for her. Conner filed for divorce first, which according to Joyce, forced her to also file. Conner failed to prove his grounds and Joyce was successful. We find that the chancellor's decision was not against the overwhelming weight of the evidence or manifestly in error and therefore must affirm.

¶18. **JUDGMENT AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., BANKS, ROBERTS AND MILLS, JJ., CONCUR. LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN AND MCRAE, JJ.**


**DAN LEE, CHIEF JUSTICE, DISSENTING:**


¶19. If our holding in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), and our standard of review in periodic alimony disputes truly mean anything, then we must reverse the chancellor's award of periodic alimony in the case at bar. Joyce Elaine McCaffery Parsons put forth scant, if any, evidence which would support the chancellor's award of periodic alimony. I believe that the chancellor's award of periodic alimony was not supported by the record and thus, I respectfully dissent.

¶20. The issue before this Court is whether, after dividing the marital assets of a marriage that lasted three and one-half years, the chancellor erred in awarding Joyce $600.00 per month in periodic

alimony. Our standard when reviewing awards of periodic alimony is "[w]e will not disturb the chancellor's decision on alimony on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error." *Creekmore v. Creekmore*, 651 So. 2d 513, 517 (Miss. 1995) (citing *McNally v. McNally*, 516 So. 2d 499, 501 (Miss. 1987)). "To aid appellate review, findings of fact by the chancellor, together with the legal conclusions from those findings are required." *Ferguson*, 639 So. 2d at 929.

¶21. In the case at bar, the chancellor's decision in regard to alimony stated:

> Joyce was working prior to her marriage to Conner and in the last full year of her employment prior to that marriage grossed slightly over $8,800. She gave up her job at Baker's Pharmacy to become a full time wife she thought she would be for the rest of her life. She is now 56 years of age and at her age it will be difficult, if not impossible, for her to re-enter the work force. She has lost the benefit of the bargain that she made, she will not be able to maintain her standard of living without alimony. I have considered the Brabham factors, which are relevant to this case, and Joyce is awarded periodic alimony in the amount of $600.00 per month.

The chancellor indicates that he has considered the *Brabham* factors and applied them to this case, these factors are:

> (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile, and (9) such other facts and circumstances bearing on the subject that might be shown by the evidence.

*Brabham v. Brabham*, 226 Miss. 165, 176, 84 So. 2d 147 (1955).

¶22. The chancellor in the case *sub judice* did not make the requisite findings of fact that *Ferguson* requires to support his determination that Joyce was entitled to periodic alimony. After reviewing the record and exhibits I note that Conner was 70 years old at the time of the divorce and suffers from Alzheimer's disease. His monthly net income is $2,713.39 and his monthly expenses total $2,250.54 per month. Joyce was 60 years old at the time of the divorce and apparently suffers few, if any, health problems. Prior to marrying Conner in November of 1989, Joyce had been divorced since 1974. From 1974 up until she married Conner in 1989, Joyce supported herself by working a variety of jobs. Joyce does not indicate that she is physically unable to return to work nor apparently does she suffer from a mentally debilitating disease, as Conner does, that would prevent her from returning to work. Joyce's financial statement lists no source of income and does not indicate any monthly expenses.

¶23. The remaining *Brabham* factors simply do not support an award of periodic alimony in this three and one-half year marriage in light of the our holding in *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss. 1994), where we stated:

> Division of marital assets is now governed under the law as stated in *Hemsley* and *Ferguson*. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined

pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines, in light of each parties' nonmarital property. *Ferguson*, 639 So. 2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done. If the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered. This process does not require divestiture of inherited or gift-acquired nonmarital property.

(Footnote omitted) (emphasis added). Joyce brought a house, approximately $1100 to $1200 in cash and some personal property to the marriage in 1989. When the marriage was dissolved in 1993, in addition to the $600 per month in periodic alimony, Joyce took her house with her, a 1988 Gran Marquis automobile paid for by Conner, approximately $8,400 from the joint savings account and a half-interest in a $16,000 motor home that Conner purchased. Additionally, she received certain personal property she had brought to the marriage along with certain personal items Conner had made or purchased for her.

¶24. *Ferguson* dictates that the chancellor make findings of fact so that on appellate review we are able to determine whether or not the court's decision should be left undisturbed. Here, the chancellor apparently took judicial notice that Joyce could not obtain employment because of her age. The record is devoid of any indication that Joyce is incapable of returning to the work force after her three and one-half year absence. Instead, the chancellor simply surmises that "[s]he is now 56 years of age and at her age it will be difficult, if not impossible, for her to re-enter the work force." Certainly, the chancellor cannot or should not take judicial notice that 56-year-olds are unsuitable to return to the work force after a three to four year absence. Moreover, the chancellor states that Joyce has lost the benefit of her bargain and cannot maintain her standard of living absent an award of periodic alimony. Based upon the state of this record, the chancellor's statement is legally unsupportable.

### CONCLUSION

¶25. We require two things of the chancellor when he or she makes a determination as to periodic alimony. First, that the award not be against the overwhelming weight of the evidence adduced at trial. *Creekmore*, 651 So. 2d at 517. Second, that the chancellor make specific findings of fact along with the legal conclusions drawn from those findings. *Ferguson*, 639 So. 2d at 929. The award of $600 per month in periodic alimony in this case violates both of these mandates and its award constitutes reversible error.

¶26. Conner Parsons has a monthly net income of $2,713.39 and living expenses of $2,250.54. This leaves Conner with approximately $452.85 to pay for any unforeseen doctor's bills and emergency medical expenses plus the $600.00 per month in periodic alimony payable to Joyce. Obviously, should this award of periodic alimony stand, Conner will be unable to meet his monthly expenses. Moreover, Conner's personal budget shortfall will only worsen as his Alzheimer's progresses. Since Joyce's award of periodic alimony is not supported by the record or by our law on equitable division, I respectfully dissent.

**PITTMAN AND McRAE, JJ., JOIN THIS OPINION.**