# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00444-SCT

*REBECCA MONROE*

*v.*

*JAMES MONROE*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 04/27/94 |
| TRIAL JUDGE: | HON. TIMOTHY E. ERVIN |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT M. CARTER |
| ATTORNEYS FOR APPELLEE: | C. MICHAEL MALSKI |
| | PAMELA LOFTIN HALL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 7/29/1999 |
| MOTION FOR REHEARING FILED: | 12/23/97 |

MANDATE ISSUED: August 5, 1999

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinions are withdrawn, and this opinion is substituted therefor.

¶2. Rebecca Monroe was awarded a divorce on grounds of desertion from James Monroe by the Monroe County Chancery Court on November 27, 1989. She appealed the chancellor's order limiting her support to an award of lump sum alimony in the amount of $12,000. In *Monroe v. Monroe,* 612 So. 2d 353 (Miss. 1992), this Court determined that the chancellor "committed a severe abuse of discretion" by refusing to grant any periodic alimony in conjunction with the lump sum award. *Monroe I*, 612 So. 2d at 358-59. Mrs. Monroe now challenges the adequacy of the periodic alimony awarded on remand. We conclude that the chancellor abused his discretion in determining the amount of periodic alimony. Further, absent some explanation by the chancellor, the award should not have been made retroactive only for twelve months, and we remand the case for amendment of the judgment consistent with this opinion.I.¶3. In *Monroe I,* we found that the chancellor's decision to grant lump sum alimony, but not periodic alimony, did not adequately take into consideration Mrs. Monroe's emotional condition, the limitations placed on her earnings capacity by her mental illness, the costs of her long-term care, her contributions to the seventeen-year long marriage

as well as to her husband's education and career, and ultimately, to Dr. Monroe's financial success. Reiterating concern for Mrs. Monroe's condition and the disparities between her financial situation and that of her former husband, we found that:

> The most significant factor is the disparity between Rebecca's and Jim's income as well as their earning capacity. Jim is in good health and currently earning over $90,000 a year practicing medicine. Dr. Monroe's earning capacity appears steady, with a very good possibility of increasing over time. Rebecca, on the other hand, has experienced a deterioration in her mental state over the last few years, as evidenced by her psychological and emotional treatment at Charter Hospital on two different occasions. While Rebecca's 1987 admittance to Charter was of a voluntary nature, her 1990 treatment was the result of an involuntary commitment by the Chancery Court. Rebecca is currently earning $400 a month delivering pizzas for Domino's, and her prospects of improvement in her earning capacity is around $23,000 at best, being employed as a public school teacher. Rebecca estimates her monthly living expenses at $2,305, while Dr. Monroe lists his at around $2,750. Given Dr. Monroe's significant income, he should have no problem contributing monthly support payments to Rebecca, even though he is responsible for raising their two children. Finally, there was no "marital home," but only a rental house in which Jim and the children remained following Jim's telling Rebecca "not to come home."

*Monroe I,* 612 So. 2d at 357. Finding the chancellor in error, we remanded the case for determination of periodic alimony.

¶4. A second hearing was held on July 22, 1993, and on February 24, 1994, the chancellor announced his findings of facts and opinion in the case. By order filed April 27, 1994, the chancellor awarded Mrs. Monroe $450 per month in periodic alimony. He made the award retroactive for a period of twelve months, allowing Dr. Monroe the option of paying the $5,400 due in monthly installments of $100 without interest. Dr. Monroe also was ordered to pay attorney fees in the amount of $1,050.

¶5. At the July 22, 1993, hearing, it was established that a wide disparity continued to exist between Dr. Monroe's resources and those of his former wife. Dr. Monroe testified that he had nearly $70,000 in vested retirement assets, as well as some IRAs. He and his present wife reported an adjusted gross income of $123,188 in 1990; and $144,000 for 1991. Dr. Monroe testified that he made approximately $158,000 in 1992 and anticipated a reduction in income to an estimated $130,000 in 1993, not including his present wife's income. His only major expense was a $5,000 per month adjustable rate mortgage payment he was making on a $180,000 house, on which he carried a $130,000 mortgage.

¶6. Mrs. Monroe, at the time of the hearing, was living with her mother and working at the Pelahatchie Bay Mini-Storage and U-Haul. She worked twenty hours a week at a rate of $4.40 per hour. She received SSI checks ranging from $276-331 per month, based upon her other earnings. Considering vocational rehabilitation, social security, Medicaid and her eligibility for one dollar prescriptions, Mrs. Monroe estimated that she was receiving $25-30,000 in government benefits. Her 1990 tax return indicated a gross income of $4,713, including $1,000 in alimony paid by Dr. Monroe. In 1991, her income was too low to file a return. The next year, 1992, her tax return showed a gross income of $7,449, including an alimony payment of $2,000. In contrast to her income, she testified that she would need $2,785 per month for living expenses.

¶7. Mrs. Monroe acknowledged that she was completing her master's degree in sociology at Mississippi

College in August, 1993 and hoped to get a certificate in gerontology. Asked what sort of jobs the degree and certificate would enable her to pursue, she indicated that she had applied for a job as an "eligibility worker" for the State with an entry level salary of $17,000 per year. At the time of the hearing, however, she had not yet found a job. She had borrowed some $7,500 to finance her education and received some assistance from Vocational Rehabilitation.

¶8. Sue Ann Meng, a licensed certified social worker who has counseled Mrs. Monroe since 1988, stated in her May 11, 1993 deposition that Mrs. Monroe initially was diagnosed with severe depression by her psychiatrist, Dr. Donald Guild, but later, was diagnosed as suffering from a bipolar disorder. At the time of the hearing, she was taking Lithium, a mood stabilizer, Desyrel, an anti-depressant, and Restoril, a sleep medication. She also was taking blood pressure medication, which coupled with her obesity, could cause problems with the other medications she has been prescribed. Ms. Meng testified that Mrs. Monroe "is probably not going to be able to tolerate any kind of high stress employment that maintains a lot of responsibility or a whole lot of interaction with other people." Mrs. Monroe received counseling on a quarterly basis, which was all that she could afford, and saw Dr. Guild two or three times a year for her medications.

## II.

¶9. Mrs. Monroe asserts that the periodic alimony award of $450 per month is inadequate in light of the factors enumerated by this Court in *Brabham v. Brabham*, 226 Miss. 165, 84 So. 2d 147 (1955). When considering the adequacy of an award of periodic alimony, several factors must be weighed, including: "(1) the health and earning capacity of the husband, (2) the health and earning capacity of the wife, (3) the reasonable needs of the wife, (4) the husband's necessary living expenses, and (5) other factors such as estimated amount of income taxes, the use of the family home or automobile, and the payment of insurance." *Monroe I,* 612 So. 2d at 357 (citing *Brabham* and its progeny). *See also Magee v. Magee,* 661 So. 2d 1117, 1125 (Miss. 1995); *Tilley v. Tilley,* 610 So. 2d 348, 353 (Miss. 1992). In *Monroe I*, we found a very significant disparity between both the parties' incomes and earning capacities. *Id.* We further noted that in contrast to Dr. Monroe's good health, Mrs. Monroe's mental health had deteriorated over the years. *Id.* The Court also found that there was no marital home for Mrs. Monroe to use.

¶10. Dr. Monroe's income had increased from between $91,000 and $98,355 at the time of the first hearing to a range of $130,000 to $158,000 between 1991 and 1993. Although Dr. Monroe did not specify his monthly expenses or those of his two children, he acknowledged that he had no significant expenses other than a $5,000 adjustable rate mortgage payment.

¶11. At the time of the second hearing, Mrs. Monroe was working part-time and earning approximately $90 a week. Her income was supplemented by a variety of government benefits. She had not been hospitalized recently, but remained under a psychiatrist's care and on a variety of medications necessary to stabilize her condition. She suffered also from obesity and high blood pressure. Mrs. Monroe, who was living with her mother at the time of the rehearing, testified that her needs, including a place of her own, provision for replacement of her car (a 1981 Datsun) and other usual expenses of living, were approximately $2,700 per month. Her recent earning history reflects about $5,000 per year. Mrs. Monroe's anticipated earning capacity, if she finds employment, is about $20,000 per year.

¶12. Sue Ann Meng, a licensed certified social worker, testified regarding Mrs. Monroe's emotional problems, as well as the limits her condition placed upon her career options. Mrs. Monroe contends that the

chancellor erred in disregarding or discrediting Ms. Meng's testimony in setting the amount of periodic alimony. However, "[T]he chancellor is the judge of the weight and worth of the testimony" in a divorce proceeding. *Magee,* 661 So. 2d at 1125 (quoting *Dubois v. Dubois*, 275 So. 2d 100, 101 (Miss. 1973)) .

¶13. The award of alimony and the amount of any such award is largely within the discretion of the chancellor. *Parsons v. Parsons,* 678 So. 2d 701, 703 (Miss. 1996); *Creekmore v. Creekmore,* 651 So. 2d 513, 517 (Miss. 1995); *Cherry v. Cherry,* 593 So. 2d 13, 19 (Miss. 1991). Nonetheless, this Court will reverse an award of alimony on appeal when it is determined to be against the overwhelming weight of the evidence. *Parsons,* 678 So. 2d at 703; *Creekmore,* 651 So. 2d at 517. Where the adequacy or the denial of alimony is at issue, "we will only interfere where the decision is seen to be oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." *Monroe I,* 612 So. 2d at 357; *McNally v. McNally*, 516 So. 2d 499, 501 (Miss. 1987).

¶14. There remains a great disparity in the health, actual income, and earnings potential of the parties. While Mrs. Monroe could not demonstrate that she was expending sums at a level greater than that affordable on periodic alimony of $450 per month, she did demonstrate a need for a greater amount. Accordingly, we conclude that the chancellor's award is against the overwhelming weight of the evidence. The award of periodic alimony in the amount of $450 per month is inadequate in light of Dr. Monroe's ability to afford support at a much greater amount. As a result of the great disparity that exists between these parties, we conclude that periodic alimony should be increased substantially.III.

¶15. Mrs. Monroe next asserts that the chancellor abused his discretion in not making the award fully retroactive to the date of the November 27, 1989 divorce decree. We agree. The chancellor awarded Mrs. Monroe $450 per month in periodic alimony. He made the award retroactive for a period of twelve months from the date of his April 27, 1994 order, allowing Dr. Monroe the option of paying the $5,400 due in monthly installments of $100 without interest.

¶16. The chancellor provided no explanation for making the award of periodic alimony retroactive only for twelve months. Further, in light of Dr. Monroe's obvious ability to pay, there is no justification for allowing him to pay the amount of the judgment in $100 per month increments without interest. In this case, we find no reason why the award of periodic alimony should not be retroactive to the date of the divorce decree. *See Gammage v. Gammage*, 599 So. 2d 569, 575 (Miss. 1992)(making award of periodic alimony retroactive to date of divorce decree). Accordingly, we remand the case for the chancellor to amend the judgment consistent with this opinion.

IV.

¶17. Finally, Mrs. Monroe seeks attorney fees and costs for her second appeal to this Court. She was awarded $1,050 in fees by the chancellor for the hearing on remand and now seeks additional fees equal to the amount already awarded, or, of at least $525 and costs. She relies on *Klumb v. Klumb*, 194 So. 2d 221 (Miss. 1967), wherein this Court found that the prevailing party was properly awarded attorney fees:

> The matter of fixing attorney's fees for services rendered in the trial court is appropriately entrusted to the sound discretion of the Chancellor. We can not say that the Chancellor abused this discretion when he allowed a $2,000 attorney's fee to the cross-complainant for her attorneys.

The appellee has moved for additional counsel fees for services rendered in this Court in the defense of said appeal. Ordinarily it is the custom of this Court to set the amount of the fee for representation in this Court at one-half of the fee in the lower court. We feel that such a fee would be excessive in this case, and we fix the amount of the additional fee for services rendered in this Court at $500.

*Klumb,* 194 So. 2d at 225.

¶18. Attorney fees are appropriate only where a party is financially unable to pay them. *Creekmore,* 651 So. 2d at 520. "The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary.'" *Id.* at 520 (quoting *Dunn v. Dunn,* 609 So. 2d 1277, 1286 (Miss. 1992)). Mrs. Monroe presented no evidence, however, of the fees charged by her attorney or of the amount of work involved. We therefore find that she is not entitled to attorney fees.

V.

¶19. We reverse the chancellor's award of periodic alimony in the amount of $450 per month and hold the chancellor in error for limiting Dr. Monroe's support obligations. Mrs. Monroe is entitled to receive substantially greater periodic alimony. Further, we conclude that absent any explanation by the chancellor, the award of periodic alimony should have been retroactive to the date of the divorce decree in 1989, and not merely retroactive to twelve months prior to the date of the judgment on remand. Accordingly, we reverse the award of $450 per month and remand for further disposition consistent with this opinion.

¶20. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., SMITH, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. MILLS, J., NOT PARTICIPATING.**