# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00357-SCT

*ROBERT BRUCE VAUGHN*

*v.*

*KAY M. VAUGHN*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/11/1999 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN W. CHRISTOPHER |
| ATTORNEY FOR APPELLEE: | LESLIE R. BROWN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 03/22/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/2001 |

### BEFORE BANKS, P.J., SMITH AND COBB, JJ.

### COBB, JUSTICE, FOR THE COURT:

¶1. This case arises out of a Final Judgment of Divorce in the Chancery Court of Madison County, Mississippi. Robert Bruce Vaughn (Bruce) and Kay M. Vaughn (Kay) had been married fifteen years and were the parents of a minor daughter, Olivia Rose Vaughn, who was twelve years old when Bruce moved out of the family home. Kay subsequently filed a Complaint for Separate Maintenance, and Bruce filed a counterclaim against Kay setting forth as grounds for divorce claims of habitual cruel and inhuman treatment, constructive desertion, habitual use of illegal and prescription drugs, or in the alternative, irreconcilable differences.

¶2. The parties entered into an Agreed Temporary Order which granted Kay exclusive use and possession of the marital residence and her vehicle with Bruce being ordered to pay all expenses and indebtedness associated with the residence and vehicle, child support in the sum of $500 per month, separate maintenance in the sum of $1500 per month, and all medical expenses on behalf of the minor child. There was also a restraining order prohibiting each party from disposing of any marital or non marital assets acquired during the course of the marriage.

¶3. Following entry of the Agreed Temporary Order, Kay filed an Amended Complaint for Divorce against Bruce setting forth as grounds for divorce claims of desertion, adultery, or in the alternative, irreconcilable differences. In addition, Kay requested permanent alimony, child support and an equitable division of the marital property. Subsequently, Bruce withdrew his counterclaim for Divorce.

¶4. Prior to the trial, Kay filed three motions for contempt against Bruce for violation of the provisions of the Agreed Temporary Order. Following the conclusion of the trial, the chancellor awarded Kay attorney's fees as a result of Bruce's contempt.

¶5. The trial on the merits was held on July 27, 1998. The chancellor awarded Kay a divorce on grounds of adultery, custody of Olivia Rose, child support, one-half of Bruce's interest in the family-owned Sonic restaurant franchise and the value of the real property, and $500 per month in alimony. Bruce filed a Motion to Amend the Judgment alleging that the chancellor committed various manifest errors. By Amendment to the Final Judgment, the chancellor relieved Bruce of the obligation to pay Olivia's college expenses after she became emancipated. Still aggrieved by the chancellor's award of child support and the method the chancellor employed to arrive at the amount awarded Kay for her interest in the marital property and periodic alimony, Bruce timely perfected an appeal to this Court, assigning as error three issues.

**I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION AND COMMITTED MANIFEST ERROR IN AWARDING CHILD SUPPORT IN EXCESS OF THE STATUTORY GUIDELINES WITHOUT ANY FINDINGS OF FACT TO JUSTIFY THE UPWARD DEVIATION?**

**II. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION AND COMMITTED REVERSIBLE ERROR IN AWARDING KAY VAUGHN PREJUDGMENT INTEREST ON THE AMOUNT ALLOCATED TO HER IN THE EQUITABLE DIVISION OF MARITAL ASSETS?**

**III. WHETHER THE COURT ABUSED ITS DISCRETION AND COMMITTED MANIFEST ERROR IN AWARDING PERIODIC ALIMONY TO KAY VAUGHN, AFTER AWARDING HER AN EQUITABLE DIVISION OF MARITAL ASSETS?**

Finding no manifest error in the chancellor's decision, we affirm.

## STATEMENT OF THE FACTS

¶6. Bruce and Kay were married on January 20, 1981, in Chickasaw County, Mississippi. Their daughter, Olivia, was fourteen at the time of the divorce trial. She was a student at St. Joseph High School and has been educated in Roman Catholic parochial schools. Kay intends for Olivia to continue to attend Catholic schools, but Bruce wanted Olivia to attend the local public school.

¶7. Early in their marriage, Bruce and Kay lived in Grenada, Mississippi, and Kay worked at their family-owned Sonic restaurant until she took a part-time job as a travel agent in Grenada. After taking the part-time job, she continued to work at the Sonic also. The parties moved to Jackson in 1985, two weeks after Olivia was born, and at that time the parties agreed that Kay should stay home to raise their child. When Olivia was two years old, Kay began working part-time as a travel agent, but after only six months, she and Bruce agreed that, due to problems with child care, Kay should resign from the job and stay home with Olivia. Approximately one year later, Kay again began working part-time at the travel agency and also assisted in the family-owned Sonic business.

¶8. When Bruce moved out of the marital home, Kay initially did not desire a divorce and remained hopeful that he would return. Subsequently, she discovered that he was living with another woman and her two children.

## STANDARD OF REVIEW

¶9. The findings of the chancery court concerning findings of fact, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. *Nichols v. Tedder*, 547 So. 2d 766, 781 (Miss. 1989). This Court always reviews a chancellor's findings of fact, but we do not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. *Bowers Window & Door Co., v. Dearman*, 549 So. 2d 1309,1312-13 (Miss. 1989). Findings of the chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence, or unless an erroneous legal standard was applied. *Pearson v. Pearson,* 761 So.2d 157,162 (Miss. 2000). For questions of law, our standard of review is de novo. *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990).

## ANALYSIS

### I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION AND COMMITTED MANIFEST ERROR IN AWARDING CHILD SUPPORT IN EXCESS OF THE STATUTORY GUIDELINES WITHOUT ANY FINDINGS OF FACT TO JUSTIFY THE UPWARD DEVIATION?

¶10. Awards of child support in Mississippi are subject to the child support guidelines set forth in Miss Code Ann. §43-19-101(2000). The guidelines constitute a rebuttable presumption that where there is one child the award should be fourteen percent (14%) of the parent's adjusted gross income. *Id.* § 43-19-101(1). These guidelines apply unless the court "makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate..." *Id.* § 43-19-101(2). The guidelines also provide for circumstances where the adjusted gross income is greater than Fifty Thousand Dollars ($50,000) as was Bruce Vaughn's income. In such cases, "the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable." *Id.*§ 43-19-101(4).

¶11. The chancellor applied the fourteen percent statutory standard to the entire amount of Bruce's adjusted gross income of $96,000. In his statement of issues raised in this appeal, Bruce refers to this as an "upward deviation" from the statutory guidelines. However, this term is inapt. "Upward deviation" would describe a requirement by the chancellor to pay a higher percentage than the guidelines suggest. Here, the chancellor simply applied the suggested percentage for one child to the full income even though that income was greater than $50,000.

¶12. The chancellor adhered to the statutory requirement that written findings shall be made in the record, noting:

> [b]ecause of Bruce's substantial income and Olivia's needs, the Court is required to make special findings as to the appropriate amount of child support. Bruce receives $8000 in net monthly income. This income is derived from Bruce's salary from his Sonic restaurants, property he rents to Sonic restaurants, and his share of profits from his partnership interest in Sonic of Byram. The evidence from Mr. Bivins indicated this income would continue. The fourteen percent child support guideline yields $1,100 in child support per month. The court finds that $1,100 is a necessary and reasonable amount of support to maintain a standard of living for Olivia, reasonably approaching that existing before the divorce. Bruce shall pay direct child support payments of $1,100 per month.

¶13. Although this Court would have benefitted from more detailed information regarding the

reasonableness of this child support award, these findings of the chancellor are sufficient to comply with the requirements of § 43-19-101(4), especially since he itemized and discussed with much specificity the nature and value of the parties' assets in the equitable distribution portion of his opinion and judgment. This award is also consistent with previous holdings of this Court that a "[c]hancellor should consider the reasonable needs of the child as well as the financial resources and reasonable needs of each parent." *Cupit v. Cupit*, 559 So.2d 1035, 1037 (Miss. 1990). Because the chancellor sought to maintain Olivia's standard of living at the pre-divorce level, he properly considered the disparity in incomes between Kay and Bruce in awarding an amount based on the statutory guidelines even though Bruce's income was considerably above $50,000 per year. This Court will not disturb a chancellor's determination of child support "unless the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion. *Brocato v. Brocato*, 731 So.2d 1138, 1144 (Miss. 1999) (citing *McEachern v. McEachern*, 605 So.2d 809, 814 (Miss. 1992) (citations omitted), Bruce's argument that the chancellor abused his discretion and committed manifest error is without merit.

### II. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION AND COMMITTED REVERSIBLE ERROR IN AWARDING KAY M. VAUGHN PREJUDGMENT INTEREST ON THE AMOUNT ALLOCATED TO HER IN THE EQUITABLE DIVISION OF MARITAL ASSETS?

¶14. The chancellor determined that the Sonic businesses were marital property subject to equitable division, but that Kay had not contributed to the business following the separation and was therefore not entitled to the $277,000 increase in the value of the business from the separation to the time of trial. Bruce does not challenge this determination by the chancellor. The only part of this determination to which Bruce objected was that Kay was awarded an amount equal to eight percent (8%) interest on her share of the marital property for the two-year period between the time of separation and the time of divorce. The amount totaled $46,010.

¶15. The calculation based on a sum equal to a percentage of interest is merely an attempt by the chancellor to reach an equitable division of the marital property. The chancellor acted within his power to determine the point in time to value the marital property. The chancellor then applied principles of equity in order to prevent Kay from being penalized too harshly by his determination that the marital property should be valued at the time of separation. Bruce argues this determination constitutes an order for "pre-judgment interest" such as would be made in a damages case where the damages are liquidated at the time of trial. Bruce then argues that this award of "pre-judgment interest" is inappropriate because the damages were not liquidated at the time of trial. Because we do not find this to be "pre-judgment interest," Bruce's argument is irrelevant.

¶16. Bruce did not challenge any other portion of the equitable distribution. However, we note with approval that the chancellor's division of the marital property was based upon a complete and careful factor-by-factor analysis of each of the factors listed in *Ferguson v. Ferguson*, 639 So.2d 921 (Miss. 1994). Based on a detailed analysis, the chancellor equitably distributed the marital property and did not abuse his discretion by using an amount equal to a percentage of interest in calculating what was equitable. This issue is without merit.

### III. WHETHER THE COURT ABUSED ITS DISCRETION AND COMMITTED MANIFEST ERROR IN AWARDING PERIODIC ALIMONY TO KAY M. VAUGHN,

**AFTER AWARDING HER AN EQUITABLE DIVISION OF MARITAL ASSETS?**

¶17. The chancellor also conducted a complete and careful factor-by-factor analysis of the factors set forth in *Armstrong v. Armstrong*, 618 So.2d 1278 (Miss. 1993), in determining that Kay's petition for permanent periodic alimony should be granted The chancellor itemized and applied the facts of this case to each of the following factors:

> 1. Income and expenses of the parties;
>
> 2. Health and earning capacity of the parties;
>
> 3. Needs of each party;
>
> 4. Obligations and assets of each party;
>
> 5. Length of the marriage;
>
> 6. Presence or absence of minor children in the home;
>
> 7. Age of the parties;
>
> 8. Standard of living of the parties both during the marriage and at the time of the support determination;
>
> 9. Tax consequences of the spousal support order;
>
> 10. Fault or misconduct;
>
> 11. Wasteful dissipation of assets by either party;
>
> 12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Id.* at 1280.

¶18. Bruce argues that the chancellor incorrectly applied certain of the *Armstrong* factors, with his main argument being that the chancellor incorrectly applied the first factor due to mistakes in computing Kay's living expenses. However, in reviewing the allowed expenses claimed on Kay's financial statement the chancellor made appropriate reductions in the amounts allowed for telephone, medical, incidentals, electricity, and yard expenses. While Bruce may disagree with the chancellor's conclusions, the chancellor clearly sought to do equity and did not abuse his discretion.

¶19. The chancellor focused on the second factor, earning capacity. Bruce's current earning capacity was described as "exceptional", with a net income of $8000 a month. Kay was unemployed and had an estimated earning capacity of $15,000 a year. The significant disparity in income is a major factor in the award of alimony. The chancellor concluded his analysis as follows:

> The Court finds there is great disparity between the Vaughns' future earning capability. Similarly, the Court finds there is a great disparity between Bruce's estate and Kay's estate. Bruce's estate is $574, 825.00, while Kay's estate is $329,946.00. It would be inequitable to make Olivia's and Kay's

standard of living suffer significantly because of Kay's inability to earn the income Bruce is capable of earning. It would further be unfair to require Kay to rely on her property settlement to live month to month. This is especially true given Bruce's ability to provide a reasonable standard of living for Kay and Olivia. After considering all of the factors, the Court awards Kay $500 per month in permanent periodic alimony.

¶20. The award of alimony and the amount of any such award is largely within the discretion of the chancellor. *Monroe v. Monroe*, 745 So.2d 249, 252 (Miss. 1999); *Parsons v. Parsons*, 678 So.2d 701, 703 (Miss. 1996); *Creekmore v. Creekmore*, 651 So.2d 513, 517 (Miss. 1995); *Cherry v. Cherry*, 593 So.2d 13, 19 (Miss. 1991). Nonetheless, this Court will reverse an award of alimony on appeal when it is against the overwhelming weight of the evidence. *Monroe*, 745 So.2d at 252; *Parsons*, 678 So.2d at 703; *Creekmore,* 651 So.2d at 517. The chancellor's award of $500 per month in permanent periodic alimony is a reasonable amount and is not against the overwhelming weight of the evidence. Thus, this issue is without merit.

## CONCLUSION

¶21. None of Bruce's claims of error justifies reversing the trial court in this case. The chancellor made the necessary findings to justify a departure from the statutory guidelines for child support. The chancellor's attempt to do equity by awarding Kay an amount based on a percentage of interest on her share of the marital estate for the time between the separation and divorce was reasonable. Finally, the award of periodic alimony was consistent with requirements of case law and was a reasonable attempt at equity. In none of these areas did the chancellor commit manifest error or abuse his discretion. Finding no error, this Court affirms the judgment of the Madison County Chancery Court.

¶22. **AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. McRAE, P.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**