755 So.2d 6 (1999)
Mary Beth Shoemake WELCH, Appellant,
v.
Jerry Wayne WELCH, Appellee.
No. 97-CA-01203-COA.
Court of Appeals of Mississippi.
April 20, 1999.
Rehearing Denied July 20, 1999.
Certiorari Denied October 7, 1999.
*7 Mark A. Chinn, Leslie R. Brown, Rex Foster, Benita Pleshette Collier, Jackson, Attorneys for Appellant.
Thomas T. Buchanan, Laurel, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. The Jones County Chancery Court granted a divorce to Mary Beth Shoemake Welch on the grounds of the adultery of her husband Jerry Wayne Welch. A later order addressed equitable division of marital assets and periodic and lump sum alimony. Mrs. Welch appeals alleging error in each part of the later order. We find no manifest error and affirm.

FACTS
¶ 2. Dr. Jerry Wayne Welch and Mary Beth Shoemake were married on June 26, 1966. They separated in 1994. Dr. Welch unsuccessfully sought a divorce from his wife in 1994 on the grounds of habitual cruel and inhuman treatment. The then-chancellor denied that Mrs. Welch's actions rose to such a level but also held that Mrs. Welch had materially contributed to the separation that the couple was then experiencing. A new petition based on uncondoned adultery was later brought by Mrs. Welch. A three-day trial was held, and on February 25, 1997, a divorce was granted based on adultery. Though the allegation of adultery was not denied by Dr. Welch in his responsive pleading, he invoked his right against self-incrimination when called upon to testify on the matter.
¶ 3. After the divorce was granted and agreement reached on some assets and on custody of the one minor child being with the father, the chancellor took under advisement these issues:
1. The identity and value of the remaining assets.
2. Equitable distribution of marital assets.
3. Whether periodic alimony should be awarded.
4. Whether lump sum alimony should be awarded.
¶ 4. An opinion was handed down on August 14, 1997. That opinion's resolution of each question is challenged on appeal. We will discuss the relevant facts as we separately examine each point.

DISCUSSION
¶ 5. A chancellor's decisions regarding equitable distribution of marital assets, *8 periodic alimony, and lump sum alimony will not be disturbed unless found to be manifestly wrong, clearly erroneous or based on an incorrect legal standard. Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994).

Issue 1: Equitable division of marital assets
¶ 6. The chancellor made findings about Mrs. Welch's separate estate as follows:

Asset Net value
Real property $581,037
Trust account $595,538
CD's/other accounts $ 30,143
 __________
 total $1,206,719

¶ 7. Mrs. Welch had a one-half interest in the assets and her brother had the remainder. However, both spouses testified that if Mrs. Welch wanted all the assets her brother would permit her to have them. The chancellor found that during the course of the marriage Dr. Welch had helped purchase some of Mrs. Welch's now-claimed separate property and paid taxes on it. This commingling helped create and preserve Mrs. Welch's separate assets, potentially making them marital assets. The chancellor decided to consider Dr. Welch's contribution to his wife's separate estate "as an equitable distribution factor." There is no evidence that Dr. Welch had a significant separate estate.
¶ 8. The chancellor determined that the marital assets of the parties were as follows:

Asset Net value
Home $ 94,815
Lots in Bay St. Louis $ 8,000
2 timber tracts $100,292
Other property $491,711
IRA in husband's name $ 24,742
IRA in wife's name $ 25,455
Profit sharing account $150,000

¶ 9. Of these assets, the chancellor ordered that the home and the Bay St. Louis lots be sold and the proceeds divided equally, that each IRA be retained in full by the spouse in whose name it was issued, and that the profit sharing plan be divided 2/3 to Dr. Welch and 1/3 to Mrs. Welch.
¶ 10. This left approximately $600,000 in marital assets to be distributed. Based on the factors that will be discussed below, primarily the over one million dollars in Mrs. Welch's separate estate, the chancellor determined to divide the assets 2/3 to Dr. Welch and 1/3 to Mrs. Welch. This gave Mrs. Welch just under $200,000 and Dr. Welch just under $400,000 of the marital assets.
¶ 11. Mrs. Welch argues that the trial court misapplied the relevant factors for determining an equitable division of marital assets. All parties agree, as does this Court, that the factors arise from Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994). We will summarize each, though Mrs. Welch only addresses the chancellor's consideration of three of them.
¶ 12. 1. Contribution to the accumulation of property. Contribution is measured by direct or indirect impact on the acquisition of property, the contribution to the stability of the home, and the contribution to the training of the incomeearning spouse. Id. The chancellor found that Mrs. Welch had contributed to the instability of the marriage, that there had been problems between some of the children and Mrs. Welch that reduced the impact of the child-rearing contribution, and that she had not been a significant contributor to Dr. Welch's education.
¶ 13. Mrs. Welch claims that it was an abuse of discretion to blame her for staff problems since her husband had an affair with one of the staff who was hired in 1990 that was the basis for the divorce. In addition there is an undercurrent of suspicion if not proof that there was at least one affair with a staff member before that. Mrs. Welch's argument presupposes a strong correlation between the disruptions she caused at the office and her husband's affair. Some of the problems seem potentially connected to her suspicions about *9 Dr. Welch, and others are not so well associated. Testimony from several witnesses combine to support the conclusion that Mrs. Welch had caused staff problems, had made some patients feel uncomfortable in using exercise equipment for which she was responsible, and was not a positive influence on the clinic's operation. On balance, it seems fair to say both that she was not a positive influence and the reasons were not totally her fault. The factor should not have weighed strongly, but we also do not find that it did.
¶ 14. Mrs. Welch further complains that the chancellor should not have relied on the findings of Chancellor Clark in the first divorce action, specifically that Mrs. Welch had materially contributed to the separation of the parties. The error according to Mrs. Welch is that the earlier conclusion did not factor in Dr. Welch's later adulterous conduct. The chancellor's reliance on the earlier findings from the first trial was not error. The validity of those earlier findings and the further perspective to be given by later-arising events were both matters that could have been addressed by the parties to the extent the issues were considered relevant.
¶ 15. Mrs. Welch's contributions as homemaker and mother were substantial. The supreme court has said that "[w]e assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Her contribution to the marital assets as a homemaker is of a type well recognized in this state. We disagree that there is any indication that the chancellor failed to consider this factor, but he had to weigh the other factors as well.
¶ 16. Testimony is conflicting as to what type of home life Mrs. Welch actually provided. The primary sources regarding home conditions are Dr. and Mrs. Welch themselves. None of the couple's four children testified. The chancellor found the couple's home life to have been unstable, and this conclusion is supported by Dr. Welch's testimony.
¶ 17. 2. Prior division or depletion of assets. This factor was not involved in the case.
¶ 18. 3. Market value and emotional value of marital assets. Mrs. Welch asserts that the chancellor erred in not considering her emotional interest in the former marital residence. She contends that by making the sale contingent on her husband's agreement as to his interest in the home, rather than on the court's assessment of the home's value, the court effectively ruled her out as a potential buyer since a recalcitrant former husband could always prevent the sale. We do not interpret the chancellor's ruling to have this effect. If either party unreasonably blocks agreement on a sale, perhaps because of that spouse's desire to be the purchaser, then a court-appointed commissioner would sell the home. At that time either spouse could attempt to purchase the home at a fair price despite anything the other spouse might previously have done.
¶ 19. 4. Non-marital assets. This was an issue relied upon heavily by the chancellor. Property acquired outside the marriage is not normally distributed "absent equitable factors to the contrary" but can be considered in measuring over-all equity. Id.
Division of marital assets is now governed under the law as stated in Hemsley and Ferguson. First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to Hemsley. The marital property is then equitably divided, employing the Ferguson factors as guidelines, in light of each parties' nonmarital property.

Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994) (emphasis added) (citation omitted). Mrs. Welch's substantial separate estate was properly considered.
*10 ¶ 20. Dr. Welch's separate assets appear to be those associated with his medical practice. It was Mrs. Welch who had the large non-marital estate.
¶ 21. 5. Tax and other economic consequences of specific divisions. This was not a factor discussed by the parties on this appeal.
¶ 22. 6. Extent to which distribution can eliminate future periodic payments. This is not specifically discussed by the parties. The chancellor provided for $2,000 per month periodic alimony and therefore the distribution was not intended to eliminate the need for further payments.
¶ 23. 7. Needs for financial security, considering assets, income and earning capacity. Mrs. Welch claims that the chancellor did not sufficiently consider that she stopped furthering her own education to concentrate on being a homemaker. She maintains that at her age she had no marketable skills. Mrs. Welch has a bachelor's degree and said she could possibly teach with additional training. She acknowledged not having looked for work since the separation. It is no small matter that a person who because of marriage has remained outside of the workplace for a substantial period of time will have difficulty entering it following a divorce. It is equally evident, though, that a person with a substantial education is not to be exempted from the need to search for employment commiserate with her abilities. Her age, fifty-four at the time of the trial, is instructive primarily on the issue of earning capacity. Mrs. Welch does not demonstrate that this factor was not considered. The awarding of alimony that will later be discussed suggests that earning capacity and prospects were very much on the chancellor's mind.
¶ 24. 8. Any other equitable consideration. The chancellor considered Mrs. Welch's non-martial assets as Ferguson permits. In addition, Dr. Welch was the one who primarily paid the taxes on his wife's non-marital estate and on the income produced from it. At least some of the land that Mrs. Welch owned was purchased with Dr. Welch's funds. The chancellor noted that these transactions bordered on a commingling of assets, but rather than consider them so, he decided these facts should be utilized for purposes of equitable distribution.
¶ 25. While reviewing each of these factors, we must also consider that an equal division of the marital estate is not mandated but rather an equitable division. Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994). Mississippi has not become a community property state. Because of Mrs. Welch's substantial estate, the distribution of marital property was equitable.
¶ 26. All monetary awards are ultimately to be considered together. The obligation of a chancellor is not to follow some precise formula as to each individual component of distribution, alimony, and other support, but to provide equitably between the spouses in the final outcome. Though we find no error in the equitable distribution, we must look at possible errors in the remainder as well.

Issue 2: Periodic alimony
¶ 27. The chancellor awarded $2,000 per month in periodic alimony. That will continue until either party's death, Mrs. Welch's remarriage, or further order of the court. Mrs. Welch argues that the amount of alimony was inadequate. Consideration of such an award may involve at least twelve factors that have been enumerated by the supreme court, the last of which is "any other factor deemed by the court to be `just and equitable' in connection with the setting of spousal support." Parsons v. Parsons, 678 So.2d 701, 703 (Miss.1996). Instead of analyzing all twelve, the chancellor referred to a different precedent that only indicated five factors. Crowe v. Crowe, 641 So.2d 1100, 1102 (Miss.1994). The chancellor found the five enumerated in Crowe to be sufficient: 1) & 2) health and earning capacities *11 of parties, 3) reasonable needs of the wife, 4) necessary living expenses of the husband, and 5) other factors such as estimated amount of income taxes, use of family home or car, and payment of insurance. There is no obligation that every factor be enumerated in every case, as Crowe itself implicitly recognizes. Instead, it is necessary for a chancellor to consider everything that is relevant in making a "just and equitable" distribution.
¶ 28. Mrs. Welch maintains that a relevant but ignored consideration was her age, that she had been a homemaker, that she had sacrificed further education and that she had helped out her husband's medical practice. That the chancellor was aware of these issues was clear from his opinion. Many of these points are fundamental to considering the Crowe factors of health and earning capacity, as well as reasonable needs. These were implicitly taken into account by the chancellor.
¶ 29. Regarding the fact that the marriage lasted thirty years, some of the precedents do list duration of marriage as a factor. E.g., Parsons, 678 So.2d at 703. We find no reason to conclude the chancellor did not consider this fact. The chancellor's opinion recited the marital history including its problems. Thus he did not only consider the length but also the quality of that marriage.
¶ 30. The issue of considering Mrs. Welch's non-marital assets reappears here. Mrs. Welch states that if after equitable distribution a deficit exists for one party, alimony is a means to rectify that imbalance. Parsons, 678 So.2d at 704-05. However, we have found that the distribution was in fact equitable, giving weight as the chancellor did to the disparity in the non-marital estates. Since the specific facts of this case permitted an equitable distribution of marital property that was unequal, periodic alimony need not undo the effect of that valid property apportionment.
¶ 31. Dr. Welch's fault in causing the divorce is not a Crowe factor and was not expressly considered by the chancellor. Fault is a proper consideration for awarding periodic alimony. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The chancellor found in considering equitable distribution that Mrs. Welch had contributed to the initial separation but that Dr. Welch's adultery was the grounds for granting a divorce. Thus the chancellor had an array of fault that he could consider in fashioning the decree. Mrs. Welch refers to a precedent in which a chancellor denied alimony to a wife based on her adultery. Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992). The court held that the wife's adultery should have been considered as only one factor in whether to award her alimony; it would not by itself justify denial. Id. Mrs. Welch inverts and expands Hammonds, saying that a husband's adultery should encourage an award of alimony beyond the amount already awarded. "Alimony is not a punishment and should not be so used." Tilley v. Tilley, 610 So.2d 348, 354 (Miss.1992). We find no reason to hold that the failure to list fault as an issue under a determination of alimony was error when both parties were at fault.

Issue 3: Lump sum alimony
¶ 32. The chancellor found that no lump sum alimony should be awarded. As with other awards in domestic cases, the supreme court has created a multifactor test for chancellors in making this determination. Cleveland v. Cleveland, 600 So.2d 193, 197 (Miss.1992). Those factors are 1) contribution to creation of the marital assets, 2) length of marriage, 3) absence of separate estate or income, and 4) absence of financial security. Id. The most important factor is the disparity of separate estates. Id. The chancellor evidently relied on this most important factor. He decided that Mrs. Welch's disparately large separate estate meant that no lump sum alimony was due. Mrs. Welch argues that the disproportion was wrongly calculated because the chancellor failed to include the value of Dr. Welch's medical *12 degree and the fact that Mrs. Welch had no marketable skills. The chancellor was not convinced that Mrs. Welch had no marketable skills. She possessed a bachelor's degree and acknowledged that she might be able to return to teaching.
¶ 33. Dr. Welch's medical degree is quite valuable. The chancellor utilized the Crowe factors in determining the need for periodic alimony, the first of which is the husband's health and earning capacity. Crowe, 641 So.2d at 1102. Based on the amount of the award, we have no difficulty in finding that his medical degree was adequately considered in reaching the award of periodic alimony. That same factor did not create a need to make even more recompense.
¶ 34. Mrs. Welch interprets a phrase in the chancellor's opinion as "mock[ing]" her monetary contribution to the marriage. The chancellor stated that Mrs. Welch "worked outside the home for approximately two years. The wife's income during this period of time was limited and the evidence is clear that the wife made little or no economic contribution to the husband's education except for those contributions derived from her homemaking activities."
¶ 35. Considering the emotions involved with the break-up of a marriage, we understand that what may not be intended in a negative way can still be perceived to have made light of a person. We do not interpret the chancellor as doing anything more than analyzing facts.
¶ 36. THE JUDGMENT OF THE JONES COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.